Murray *vs.* Sells.

GEORGE J. MURRAY, plaintiff in error, *vs.* HOLMES SELLS, for use, defendant in error.

1. Where a homestead was laid off under the act of 1868, to A, as the head of a family consisting of his wife and child, and the husband and wife sold the homestead, and invested the proceeds in other real estate, intending that the property in which the money was invested should take the place of and be in lieu of the homestead, but by mistake the deed was made to the wife only as a free trader, and she having become a bankrupt, the property was sold in bankruptcy to a purchaser who had full notice of all the facts:

*Held*, that equity will treat the title to the wife as a trust for the same uses as was the homestead under the law, and will treat the purchaser with notice, as holding for the same use as she did.

2. In this state, in an action at law, under the statutory form, by the husband, the plaintiff may amend his action, setting forth such mistake, and, on proper proof, treat the deed to his wife as it was in fact intended.

3. Although, as a general rule, equity will only correct a simple mistake when it is mutual, yet when the actual grantor in a deed is merely a nominal party who has parted with his interest to other third persons, and the contract is in fact between them, and the mistake is mutual between the parties at interest, equity, which looks only to the substance of the transaction, will correct a mistake, mutual as to the several parties, though the nominal actor has made no mistake, but merely did as he was directed.

4. It is the duty of a judge in his charge to the jury, to give the law substantially as it exists on the facts of a case as they appear in the evidence; but it is not error in him to fail to give a particular principle of law in charge, if the evidence does not present a case fully meeting the principle of law insisted on.

5. That one has been guilty of a fraud as to a particular parcel of land in his dealings with one person, so that, as to this person, he is estopped, does not estop him as to another person who is not a privy in estate with the first.

6. In this case the evidence being conflicting, and the judge having fairly submitted it to the jury under the evidence and the law arising upon it, we do not feel that the verdict is such as justifies the interference of this court.

Ejectment. Homestead. Trust. Mistake. Amendment. Equity. Charge of Court. Estoppel. New trial. Before RICHARD H. CLARK, Esq., Judge *pro hac vice.* Fulton Superior Court. October Term, 1873.

Holmes Sells, for the use of his wife, Amy H. Sells, and minor child, John D. Sells, brought complaint against Wiley O'Shields, tenant in possession, for the recovery of a tract of land lying in the city of Atlanta, known as that portion of the A. J. Orme subdivision of block number one hundred and forty-six, in the original land lot number fifty-one, in the fourteenth district of originally Henry, now Fulton county, fronting on east Harris street, one hundred and eighty-three feet, and running back on Butler street, two hundred and two feet. George J. Murray, the real party at interest, was, by order of court, made the defendant.

At the trial term the plaintiff proposed to amend his declaration as follows:

Plaintiff shows that in the year 1868, he applied to the ordinary of said county for an exemption of personalty and a homestead of realty, under the constitution and laws of said state, for the use and benefit of said Amy H. and John D. Sells, and, after due notice, said ordinary allotted to him for such exemption, a steam saw-mill in DeKalb county, Georgia, and on the 2d of April, 1869, he set apart to him for such homestead, a lot of land in the said city of Atlanta, on the corner of Oak and Ivy streets. Plaintiff and his wife, on the 19th day of April, 1870, sold and conveyed said homestead land for the sum of $1,711 00; and for the purpose of investing a part of the money thus realized, he purchased of Rondeau & Company, in the fall of the year, the lot of land first above described, for which he agreed to pay, and did pay the sum of $1,000 00; in consideration of the same, well knowing that said land was being bought for the purpose of said investment, they promised and agreed to sell for the use of Amy H. and John D. Sells. Rondeau & Company purchased said land of A. J. Orme, and held his bond for titles to make them a deed on receiving the purchase money therefor, a portion of which was then unpaid; which being fully paid off and discharged, they further promised to procure for plaintiff from said Orme the necessary and proper

Murray vs. Sells.

deed. In pursuance of said agreement, with plaintiff's consent, he authorized and employed William A. Rondeau, one of the said firm, a man in whom he had the utmost confidence, to see Orme and obtain from him such deed, but no instructions were given to him in regard to the form of execution of said deed or the parties thereto, though being one of the contracting parties, and cognizant of all the facts, he was expected by all of said parties to obtain from said Orme a deed in conformity to the said contract, conveying said land to the plaintiff for the use and benefit of his family, the said Amy H. and John D. Sells. Said Rondeau undertook to procure said deed, but in betrayal of such confidence of trust, or through fraud, mistake, ignorance, inadvertence or misapprehension, he obtained from said Orme the deed made and executed to Amy H. Sells on the 2d day of January, 1871, conveying said land to her as a free trader.

Rondeau & Company, in full satisfaction of said parol contract for the sale of said land, on the receipt of said deed, delivered the same to plaintiff, as the proper deed under the contract, and without an examination of the same—believing, in good faith, that it was all right, and in accordance with said contract—he received the said deed, and was put in possession of the land by them under the same, for the use and benefit of the said Amy H. and John D. Sells. Plaintiff, on receiving said deed and taking possession of said land thereunder, presented the same to the ordinary of said county for his approval of said purchase and investment, and on the 18th day of February, 1871, he indorsed his approval and confirmation of the same on the back of said deed, and plaintiff had said deed, and the said indorsement thereon, recorded in the clerk's office of the superior court.

Rondeau & Company had no desire or intention of having said deed made to Amy H. Sells, as a free trader, and in procuring such deed, said Rondeau acted without any authority or power, in the absence of any contract justifying his conduct, and violated the trust and confidence place in him as aforesaid; and if said deed is allowed to stand in its present absolute

form, it will operate as a fraud and great wrong on the rights of the plaintiff and his family.

In making said purchase and procuring said deed, no legal advice was obtained, and all of said parties were unskilled in the law, its technicalities and forms of conveyance.

Plaintiff therefore shows that in the execution of said deed a mistake was made, as hereinbefore set forth, and the same consists in the fact, as stated, that by said deed said land is conveyed to said Amy H. Sells, as a free-trader; whereas, had it been drafted in conformity with the contract under which the same was made and executed, and in accordance with the intention of the parties, said land would have been thereby conveyed to the plaintiff for the use and benefit of the said Amy H. Sells and John D. Sells; owing to said mistake or error, said deed does not speak the intention of said parties who made the contract by virtue of which said deed was made and executed.

Orme was not a party to the contract made between plaintiff and said Rondeau & Company for the purchase and sale of said land; and he having received all the purchase money due him, was wholly indifferent as to the entire transaction, and stood ready and willing to convey said land to whomsoever, and in such manner, as said Rondeau & Company might designate; and when said Rondeau requested said Orme to make said deed to Amy H. Sells, (if, indeed, he made any such request,) he honestly believed that such a deed was sufficient under said contract to secure said property for the use of plaintiff's said family.

On the 21st day of March, 1871, Rondeau & Company were forced into bankruptcy by one of their creditors, and William R. Hammond, Esq., was appointed their assignee by the register in bankruptcy; and said assignee, on the 3d of July, 1871, sold said land first above described, subject to all incumbrances, and at said sale the defendant bid off the same at and for the sum of $2,500 00, and having purchased said land in full recognition of plaintiff's right thereto as aforesaid, after the same had been passed on and recognized by the

Murray *vs.* Sells.

United States district court of Georgia, he respectfully submits that he is now estopped from denying plaintiff's title to said land. Plaintiff was present at said sale, and through his attorney, Mr. Tigner, forbid the same, and then and there, in like manner, gave notice to said defendant, who was present, and all others then present, that said land and improvements thereon were the property of plaintiff for the use of his wife, Amy H. Sells, and his minor child, John D. Sells; that plaintiff's said homestead money paid for the same. He fully informed all persons then and there present, including the defendant, that in the execution of said deed a mistake was made, as hereinbefore set forth; that the ordinary of said county had approved on said deed said purchase as aforesaid, and that said deed was recorded with said order of approval as aforesaid, and that said deed was in his custody, and said land in his possession thereunder.

Notwithstanding this notice, said defendant bid off said land, as stated; and though he purchased the same subject to all incumbrances thereon, yet, disregarding the right and title of plaintiff, he immediately thereafter unlawfully seized and took possession of said land and the improvements thereon, and now refuses to deliver the same to him, or pay him the profits thereof.

Plaintiff further shows, that in 1870 he and his wife sold said exemption of personalty for one hundred and ten thousand feet of lumber, and after selling a portion of it for $300 00, which sum of money was used by plaintiff towards the payment of said purchase money, the remainder of said lumber was used in erecting buildings on said land and otherwise improving the same.

He hereby offers to do and perform whatever he ought to do and perform towards the rectification of said mistake in said deed, or in the establishment of his right and title to said land for the use and benefit of his family.

He therefore prays that on the final hearing of this cause, the court sitting in equity, may find and decree that said deed made by A. J. Orme to Amy H. Sells, a free trader, was

made and executed under and by virtue of said parol contract between plaintiff and said Rondeau & Company, and that the purchase money of said land was paid by plaintiff out of moneys in his hands for the use and benefit of his said wife and child, and realized by the sale of said homestead and exemption property, and that it was the intention and purpose of all the parties that said land should be conveyed by said Orme to the plaintiff for the use and benefit of the said Amy H. and John D. Sells.

That the court may further find and decree that in the execution of said deed, a mistake was made by the contracting parties, and that through such mistake, ignorance, inadvertence or misapprehension of said parties, or of said agents, or the fraud of said Rondeau & Company or said agents, said Orme was caused to make said deed to said Amy H. Sells, a free trader, and that on account of said mistake, said deed does not speak or set forth the intention of said contracting parties, and that it was the real and true intention of said parties that said land should be conveyed by said Orme to plaintiff for the use and benefit of his wife, Amy H. Sells, and John D. Sells, their minor child.

That said deed may be reformed or corrected accordingly, and made to convey the legal title to said land to the plaintiff for the use and benefit of his said wife and child.

But should the court be of opinion that the mistake in said deed cannot be corrected and the same reformed to speak the truth, and to convey to plaintiff said land for the use of his family as aforesaid, then he prays that the court may decree that said land was bought by him from said Rondeau & Company for the use and benefit of said family, and that the purchase money was paid to Rondeau & Company by the plaintiff, with money in his hands, as trustee for said Amy H. and John D. Sells, and realized by a sale of said homestead and exemption property as aforesaid, and that a resulting or implied trust in his favor and for their use, may be set up and established in said land; that said defendant may be decreed to hold the legal title of said land for the use of said Amy

H. and John D. Sells, and that he may be required, by order of this court, to convey said land under his hand and seal to the plaintiff, as trustee for the said Amy H. and John D Sells, for their sole use and benefit; that the title to said land, if in defendant, may be divested and vested in plaintiff.

Plaintiff further prays that he and his said family may be put in possession of said land, and that a decree be entered in his favor for their use against said defendant for the amount of the profits of said land since the 3d of July, 1871.  Plaintiff waives all discovery.

The amendment was objected to.  The objection was overruled and defendant excepted.

A demurrer to the same was then filed so far as it attempted to set up and correct a mistake in the deed therein specified. The demurrer was overruled and defendant excepted.

All the evidence necessary to an understanding of the case is embraced in the charge of the court.  The following verdict was returned:

"We, the jury, find in favor of the plaintiff an error in the deed, and give the plaintiff the house and lot without rents or interest, and that deed be vested in the plaintiff for the use of his family."

The defendant moved for a new trial on the following grounds:

1st. Because the verdict was contrary to the following charge: "This is a suit brought by Holmes Sells for the use of his wife and child, against the defendant, to recover a certain city lot, on the ground that it was purchased as a homestead with money arising from the sale of a homestead set apart according to the laws of this state; that the deed for the property in question should have been taken so as to express said homestead right, but by mistake, or violation of duty of the agent, Rondeau, to so make the purchase, the deed was made to Mrs. Amy H. Sells in her capacity of free trader.  Plaintiff prays on this ground a reformation of the deed, so as to speak what they allege as the true intent of the parties, and that they may recover the property.  I charge you that the pleadings

and the parties do not make a case for the reformation of the deed, because the maker of the deed, Orme, is not party defendant, and you can make no decree to affect him. But if you believe, from the evidence, that there was a homestead set apart legally to Holmes Sells as the head of a family; that this homestead was permitted to be sold by the ordinary; that it was sold and the purchase money was reinvested in the premises in dispute, and that the taking of the deed to Amy H. Sells, as free trader, was by mistake of the agent to so take the deed, or that he violated his trust in so taking it, you may find that the legal effect of that deed is to pass the title from Orme to Holmes Sells and family as a homestead, and that the plaintiff is entitled to recover the premises in dispute, it being a rule of equity that trust funds may be followed into whatever property they may be traced, and the property recovered. It is not necessary that it should be the identical money or bills, but the proof should satisfy your minds that the money realized from plaintiff's homestead is now in the property in dispute. If you are satisfied of this fact from the proof, and there is no reason shown by the defendant why his equity is not paramount to this, it will be your duty to find for the plaintiff in the manner I have prescribed. It all depends upon the truth and good faith of the plaintiff's case, of which you are the sole judges under the rules of law given you in charge. In order to arrive at a proper conclusion, you are to weigh all the circumstances against this theory, as well as those in its favor. One circumstance is the mortgage which it is alleged, and upon which proof has been offered, that Mrs. Sells made to Kyle of the same property, in her capacity as free trader. If you believe she did make such a mortgage, it is a circumstance which goes to illustrate the truth or falsity of the plaintiff's case; and if that circumstance satisfies your minds that the plaintiff's claim is untrue and not founded in good faith—that it is so inconsistent with the facts they set up to entitle them to recovery, that both cannot be true—it will be your duty to find for the defendant. There is also another circumstance of like

character in the proof admitted to the point, that within a short time after the mortgage to Kyle, Mrs. Sells, as a member of the firm of Rondeau & Company, drew out of the firm an amount of money sufficiently large, or nearly so, to represent said homestead fund. If you believe that this circumstance, like the others, goes to prove and does prove to your satisfaction, that this purchasing of the property was as a homestead, but by mistake or the acts of a faithless agent, the deed was not taken in that right, has no foundation, or insufficient foundation in truth, it will be your duty to find for the defendant. This circumstance has also another bearing upon this case, and that is : if the facts were in all material matters as alleged by plaintiff, but notwithstanding the mortgage alluded to was made to Kyle in accordance with the right expressed in the deed, and then Mrs. Sells drew out of Rondeau & Company, from the money obtained from Kyle, an amount in representation of the homestead, then it would be your duty to find for the defendant, on the ground that this destroys the entire basis of plaintiff's case; for in that case the homestead fund could not be in this property. But on this point, if you believe from the evidence that the amount so received from Rondeau & Company was on another account, or from another source, you would be authorized to conclude that that money was not the proceeds of the homestead. Defendant asks me to charge in writing as follows: 'If you believe, from the evidence in this case, that the plaintiff was guilty of fraud in having the deed made as it was to Mrs. Sells, as a free trader, and that she practiced a fraud upon J. C. Kyle in mortgaging this property to him in that character, and received a benefit thereby by getting a portion of the money raised upon such mortgage, she cannot take advantage of her own wrong and recover in this case.' I cannot give the charge in the language couched, because Kyle, to whom the mortgage was made, is not a party to this proceeding; but I do charge you, as heretofore, that this is a circumstance from which you may conclude that plaintiff's case has no foundation in truth or good faith. If you believe that defendant

purchased at an assignee's sale, upon a judgment which sold this property subject to this incumbrance, or that at the sale notice was given of this claim, so that the purchaser must have known it, that sale is no bar to plaintiff's recovery, if, in all material matters, as charged, they have proven their right to you, their legal right. I charge you that you need not consider the evidence as to the personalty exempted, and its having been added to or expended upon this property. If a homestead is made out, whatever is put upon it follows that title. If personalty exemption and homestead have been blended, that concerns the creditors of Holmes Sells, who have their remedy, and not this defendant. This, gentlemen, is a case for your consideration alone, upon applying the law as I have given it in charge, to the facts. Upon the latter you are supreme. If, as instructed, you find for the plaintiff, you will frame your verdict so as to express that the deed from Orme to Amy H. Sells, free trader, shall have the legal effect to put the title in this property in Holmes Sells, the head of his family, as a homestead under the laws of Georgia, and that the plaintiff recover the premises in dispute, with such rents or *mesne* profits as the evidence satisfies your minds they are entitled to, from the time defendant took possession until now. If the plaintiffs have not established their case to your satisfaction, under the proof and the law as given you in charge, you will say, 'we find for defendant.'"

2d. Because the court erred in charging as follows: "If you believe, from the evidence, that there was a homestead set apart to Holmes Sells, legally, as the head of a family; that this homestead was permitted to be sold by the ordinary; that it was sold, and the purchase money was reinvested in the premises in dispute, and that the taking of the deed to Amy H. Sells, as a free trader, was by mistake of the agent to so take the deed, or that he violated his trust in so doing it, you may find that the legal effect of that deed is to pass the title from Orme to Holmes Sells and family, as a homestead, and that the plaintiffs are entitled to recover the premises in dispute, it being a rule of equity that trust funds

Murray *vs.* Sells.

may be followed into whatever property they may be traced, and the property recovered."

3d. Because the court erred in charging the jury "that if they believed from the evidence that the money received by Mrs. Sells from Rondeau & Company, if any was received after the mortgage of the premises in dispute to Kyle, *was on another account* than the homestead account, they would be authorized to conclude that that money was not the proceeds of the homestead."

4th. Because the court erred in refusing to charge as requested by defendant's counsel, as set forth in the charge of the court in the third ground in this motion.

5th. Because the court erred in charging as follows: "You need not consider the evidence as to the personalty exempted, and its having been added to, or expended upon, this property. If a homestead is made out, whatever is put upon it follows that title. If personalty exemption and homestead have been blended, that concerns the creditors of Holmes Sells, who have their remedy, and not this defendant."

The motion was overruled and defendant excepted. Error is assigned upon each of the aforesaid grounds of exception.

D. F. & W. R. HAMMOND; B. H. HILL & SON, for plaintiff in error.

MARGENIUS A. BELL; W. A. TIGNER; A. W. HAMMOND & SON, for defendant.

McCAY, Judge.

1. If the truth of this case is as claimed by the defendant in error; if honestly and fairly, his homestead was laid off out of his own property, and it was sold and the proceeds disposed of as he claims, and with the object and intent he claims, and by reason of the mistake of his agent, the formal title was made to Mrs. Sells, and the plaintiff in error bought it with full notice of the facts, it is eminently just that Sells, who had no part in the firm of Rondeau & Company, and who,

by this mistake, would lose his land, should be protected, especially against the plaintiff in error, who acted with his eyes open and at his own risk. Why should Sells' land go to pay Rondeau & Company's debts? What equities should arise in favor of Murray who was fully notified that this land was not Mrs. Sells,' and who purchased it, speculating upon his chances of showing that the land was hers, notwithstanding the notice to him? Very probably he felt quite certain the claim of Sells was untrue, and that he, Murray, would succeed in establishing that view of it. He has failed in doing that to the satisfaction of a jury, and must take the consequences. The jury having found the facts for the plaintiff below, we are to treat them in our inquiries as to the law arising thereon, as with the plaintiff below. We are to assume that the place sold to McPhee was the property of Sells, as the head of his family; that with a part of the money he bought the land in dispute from Rondeau & Company, that he did so in good faith, with intent to reinvest the proceeds of his homestead in it, and that by a mistake, or by ignorance, or fraud of the agent sent to Orme, the deed was made, not to himself but to Mrs. Sells, as a free trader, and that the defendant below bought the land with full notice of the facts. Assuming this, we have not the slightest doubt that under the law such a mistake will not be permitted to deprive him of his property. If this mistake did in fact occur, Mrs. Sells (free trader) was a trustee for Sells as the head of his family. Equity would have arrested the mistake as to her, and against purchasers from her with notice. We do not see that any irregularity in the sale to McPhee of the homestead can affect the question as to Murray. Mrs. Sells did not, if the case be as the plaintiff below claims it and as the jury has found, pay for the Rondeau property in any way. The money came from Sells; where he got it is immaterial; he did not pay it to Rondeau & Company for the purpose of buying the property for Mrs. Sells, free trader. It was intended to be his own property; the investment of the money he got from McPhee and Mrs. Sells (the free trader) had nothing to do with it. Nor is it material

whether the mode taken to reinvest was by consent and approval of the ordinary, so far as the present dispute was concerned. Admit that McPhee was defrauded by Sells, still, if Sells took the money and invested it as a homestead, for himself, as the head and trustee of his family, he had a right to do it as against Rondeau & Company and their creditors, though he had a dozen homesteads. Though his own creditors might object, what right have the creditors of Rondeau to find fault. Sells was not one of that firm, and if he intended to, and did in fact, invest the money he got from McPhee, as he says he did, and the deed was by mistake made to Mrs. Sells, (free trader,) Sells, as the head of his family, has as much right to correct the mistake as though John Doe had invested money, as the head of his own family, and by mistake the deed had been made to Amy Sells, free trader. Some of the facts in the record go to create a strong suspicion that the whole story is a got up thing to hide Rondeau & Company's property, and had the jury found for the defendant below their verdict could have been sustained on this ground. But the judge put all these circumstances fairly before the jury, and put them, as we think, strongly for the defendant. But if Sells *did* put the McPhee money into this property, as he says, and as Rondeau says, and with the intent and object stated, the case for the plaintiff below was very clear under the law. It is the simple case of a man buying property, and by a mistake in the deed, the title is made to a wrong name and wrong person. That is the legal aspect of it if the jury have found rightly on the facts. That the money Sells used to make the purchase was chargeable with the homestead interest, or claimed to be charged, has little to do with it. The McPhee property never, in any sense, belonged to Mrs. Sells, free trader. It was set apart to Sells, as the head of his family, as a homestead for them under him, and he being no part of the firm of Rondeau & Company, there is no reason why his property, or the proceeds of it, should go to their debts.

2. Properly, the objection to the amendment is not before us. The decision of the court overruling it occurred at the

trial and no interlocutory bill of exceptions was filed. The allowing of the amendment is not one of the grounds for a new trial, and the bill of exceptions now before us, was not signed by the judge until after his judgment overruling the new trial, which was more than thirty days after the adjournment of the court at which the trial before the jury took place. But as there may be some question whether, if the amendment was not good, the verdict and charge are illegal, based, as they are, upon the idea that the jury might treat the deed from Orme as a mistake, and as though it were reformed, we feel it to be our duty to decide whether the amendment was properly allowed. Under section 3082 of the Code, a suitor *may* choose his forum. He is not compelled to go into equity, and the superior courts are clothed with full power to mould their verdicts and judgments so as to grant equitable relief. Without doubt, under the facts set forth in the amendment, equity would grant the relief sought. And under the broad power of this section, we think the amendment was properly allowed; perhaps the prayer for a formal reform could not be granted for want of Orme as a party. But the court might, as against the defendant, who is charged with full notice, decree that he shall stand in Mrs. Sells' shoes, who, if the facts stated in the plea be true, is clearly only a trustee for the persons who should have been the named grantees in Orme's deed. It is a purely technical objection to say that this is a purely equitable proceeding. A court of law can do all that is asked, without any help from the peculiar processes or forms of proceeding usual in equity. Nothing is required but to recognize as legal, rights which are, in fact, perfect equities, and enforce them. If the section of the Code enlarging the jurisdiction of the superior courts, as courts of law, does not go this far, it might as well be dropped altogether. Nor is it any good objection to this amendment that the original proceeding is in the statutory form. No new parties are introduced, no *new* right of action is asserted; the amendment is merely to state in a new form, the right which is claimed in the original declaration, to-wit: that the title is in Sells, as

Murray *vs*. Sells.

the head of his family; and in this respect it comes within even the narrow rule laid down. We think, therefore, the judge was right in allowing this amendment and in admitting evidence to support it, and in charging the jury as he did as to its power under it.

3. The objection that a mistake to be corrected must be mutual, is true of a simple mistake, for if both parties be not mistaken, one of them has either acted *bona fide*, and has a right to his bargain, or he has been guilty of fraud, which stands for relief upon its own ground. But here, Orme was a mere nominal party to the deed. The real contractors were Sells and Rondeau & Company. Orme lost all interest when his money was paid, and he did not care to whom he made the deed, if Rondeau & Company were willing. Assuming, which we must do, in asserting the legal proposition, that this trade between Sells and Rondeau did take place, as they both say, and as the jury has found, it would be very extraordinary if equity would be so hampered by the technical rule that mistakes in contracts must be mutual to be corrected, as to refuse to interfere, when, as to the parties really at interest and really contracting, the mistake was mutual, because Orme, the mere nominal party, holding nothing but the paper title, and who was already bound by his bond to make the deed to Rondeau & Company's direction, was not mistaken. To do so would, indeed, be sticking in the bark, and would be utterly at variance with that broad rule so familiar and so dear to a court of equity, that it will look to the substance and not to the form of matters which come before it.

4. We do not think the court erred in his charge. In substance he did say that all the defendant's equities were to be considered, if the jury deemed them superior to the plaintiff's, and had the jury been satisfied from the evidence that Rondeau & Company had any tangible interest in the property, we think, under the charge, it would have been their duty to burden the plaintiff's recovery with the discharge of that interest. But if Sells and Rondeau tell the truth, the title to this land was really in Sells, and he was entitled to recover

it; and any interest Rondeau & Company had in it, or Mrs. Sells, as a free trader, had, the defendant would, in equity, and under the pleadings at law, have a right to set up as a charge upon the land. There is quite strong proof that Rondeau & ·Company furnished the material and much of the work to build the houses, though Rondeau testifies that Sells always kept money on deposit with him to pay for these things, and that they were paid for. But in no event, under the evidence, could *these* equities have been considered by the jury, for the simple reason that there was no evidence at all as to the value of these advances of work and material by Rondeau & Company. Any consideration of them, with a view of decreeing in their favor, would have been improper, because there was not a particle of evidence as to the value or extent.

5. We think the charge as to the fraud of Kyle was properly refused. Murray can not plead as against even Mrs. Sells' the fraud on Kyle, if there was a fraud. ·He, Murray, has nothing to do with Kyle, who doubtless will take care of himself, and he is no privy of Kyle's. Courts do not undertake to hold people to their acts, which are false or untrue, except as against persons who have been injured by the fraud, or who have acted on it as a consideration moving them to act, and there is no pretence of that as to Murray. We doubt if this written request fairly means anything more than that Kyle was defrauded. The parties are bound by that fraud, even as to Murray. But it is contended that the request has a wider range, and that in this refusal the court declined to charge, that if the deed to Mrs. Sells and to Kyle was only part of a scheme to defraud Rondeau & Company's and Mrs. Sells' creditors, then they would be bound. But this is in fact the whole of the defendant's case, and was given in the very strongest terms by the judge. Nor was it possible for them to suspect that by his refusal of this charge he had repudiated what he so strongly and emphatically told them was the very point of the case. Indeed, *that* and *that* alone was the issue on trial. It was not material as a matter of law whether it was Sells' homestead money or his private money

that bought this land.   If Sells saw fit even of his private money, or of money which he fraudulently got from McPhee, to buy this land for the special use of himself, as the trustee of his wife and son, under the terms of the homestead act, and the deed was made by mistake to Mrs. Sells, as a free trader, then, as against Mrs. Sells or her creditors, or the purchaser at bankrupt sale, with notice, the plaintiff was entitled to re-cover.   But if the scheme was a mere device to cover Ron-deau & Company's property, or Mrs. Sells' property, from the debts of the firm, then he did not have a right to recover. The judge gave this to the jury as the law, perhaps not so strongly for the plaintiff as he ought, and there is nothing in his refusal of this charge as to the fraud upon Kyle that in the least takes back or modifies this main point, and the jury fully understood this.

6.  The true complaint in this case is with the verdict of the jury.   They saw fit, in spite of the various. *indicia* of fraud on, Rondeau & Company's creditors, pointed out so strongly by the judge, to believe Sells and Rondeau; and so believing, they found for the plaintiff.   There is a great deal of evidence in the record tending to show that the truth of the case is with the defendant, and had the jury so found we should have said, amen.   But the contrary is the case, and we have no right to interfere.   Two witnesses sus-tain the verdict entirely and emphatically.   On the other side, there are very suspicious circumstances—but that is all, going to discredit Sells and Rondeau.   The jury, after weighing all, have believed Sells and Rondeau; and as we have said in such cases so often, we have not the right to in-terfere.   By our law the jury's verdict is final upon facts like these.

Judgment affirmed.