15503

CITIZENS BANK OF DARLINGTON v. McDONALD *ET AL.*

(24 S. E. (2d), 369)

246

December, 1941.

*Mr. Samuel Want, Mr. James Verner,* and *Mr. Sam Rogol,* all of Darlington, Counsel for Appellants,

*Messrs. McEachin & Townsend,* of Florence, Counsel for Respondent,

Counsel for Appellant, in Reply,

February 11, 1943.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM:

The action in this case was commenced by the service of the summons and complaint, dated July 25, 1940, of Citizens Bank of Darlington, as plaintiff, against Carl McDonald, D. Carl Cook, and Pilot Life Insurance Company, as defendants. The complaint alleges that on or about April 19, 1939, Pilot Life Insurance Company made and delivered to Carl McDonald its check on Guilford National Bank, Greensboro, North Carolina, for $1,158.45, which bank was therefore required to pay that amount to Carl McDonald; that subsequently the check was endorsed by Carl McDonald and D. Carl Cook, and that the latter subsequently delivered it to the plaintiff, so endorsed, and received from the plaintiff the above-named sum; that the check was endorsed by the plaintiff and was presented to and paid by Guilford National Bank, which was thereafter informed that the endorsement in the name of the payee was not genuine but had been forged, and that the payee denied liability thereon, and that Guilford National Bank thereupon demanded that the amount of the check be refunded to it, and that the plaintiff, as guarantor of prior endorsements complied with that demand and thereupon became the lawful owner of the check; that the plaintiff later presented the check to Carl McDonald and D. Carl Cook and demanded payment, which demand was refused; that the plaintiff is informed that the check represents a cash loan made by Pilot Life Insurance Company to Carl McDonald, which loan was secured by the pledge of a certain policy of insurance issued by that insurance company to Carl McDonald, and the plaintiff alleges that it is entitled to subrogation to all securities and other rights possessed by that insurance company in relation to that loan. The prayer is for judgment

against the defendants named for the above stated amount, with interest and costs, and that the plaintiff be subrogated to the above-described rights and remedies of Pilot Life Insurance Company. To this complaint, answers were filed by the defendants, Carl McDonald and Pilot Life Insurance Company, but no answer was filed by the defendant, D. Carl Cook. Pilot Life Insurance Company also filed a cross complaint against Carl McDonald and D. Carl Cook, to which cross complaint, and to the two above-described answers, an answer was filed by D. Carl Cook. It is not alleged in any of the pleadings by whom the forgery, if one existed, was committed.

For the purpose of saving time in proving certain matters, certain facts of the case were agreed upon between the parties, as follows: That Pilot Life Insurance Company made and delivered its check on Guilford National Bank in the amount, and at about the time named in the complaint; that the check was subsequently presented to the plaintiff by D. Carl Cook, with the names of Carl McDonald and D. Carl Cook written on the back thereof; that the plaintiff paid the amount of the check to the defendant, Cook; that the Guilford National Bank paid the check upon presentation, but was subsequently informed by Carl McDonald that he had not endorsed it and that his name was written on the back without his knowledge or consent; that the Guilford National Bank communicated that information to plaintiff and demanded the refund of the amount of the check; that the plaintiff made the refund and received the check which it now owns; that the check was issued pursuant to an application for a loan on a certain insurance policy, and that the application is signed with the name of Carl McDonald, the genuineness of which is denied by McDonald, and Pilot Life Insurance Company, and that when the amount of the check was refunded to Guilford National Bank, the insurance company received credit for the amount thereof.

The issues in the case arise out of the denial of the appellant, Carl McDonald, that he signed the application for the policy loan, or endorsed the check representing the proceeds of the loan. The case came on for trial in the Court of Common Pleas for Darlington county before the Honorable C. T. Graydon, Special Judge, and a jury, at the December term, 1941. By stipulation of counsel, the matter was submitted to the jury on the sole specific issue: "Is the signature of Carl McDonald on the check of Pilot Life Insurance Company a forgery? * * * You answer that 'Yes' or 'No'. * * *." The jury answered the issue "No", and thereupon judgment was entered in favor of the respondent, Citizens Bank of Darlington, against Carl McDonald and Pilot Life Insurance Company for the amount of the check with interest, and the judgment was adjudicated to be a lien upon the said policy of life insurance. The defendants, Carl McDonald and Pilot Life Insurance Company made a motion for a new trial, which motion was refused, whereupon notice of intention to appeal was duly served, and the appeal of the two last-named defendants was presented to this Court upon the following ten exceptions:

"It is respectfully submitted that in the trial of this cause the Circuit Judge erred in the following particulars:

"I. In instructing the jury that the burden of proof on the issue of forgery was on the defendants, Carl McDonald and Pilot Life Insurance Company, the error being that the burden of establishing the genuineness of the signature on the check in question was on the plaintiff.

"II. In giving the jury conflicting instructions on the subject of the burden of proof as to the alleged forgery, some of such instructions putting the burden on the plaintiff, and some on the defendant.

"III. In erroneously instructing the jury on the burden of proof as follows:

" 'Always realize that a person has to prove what he alleges by the preponderance of the evidence. If they don't

prove it by the preponderance of the evidence, although you believe it, don't let it sway you,' the error being that the instruction is self-contradictory, since the belief of testimony by the jury constitutes such testimony a preponderance.

"IV. In instructing the jury that in answering the issue submitted to them they could take into consideration matters embraced within the doctrine of estoppel, and apply that doctrine, the error being that (a) the issue of estoppel was not presented by the pleadings or asserted or relied upon by counsel; (b) there is no testimony on the issue of estoppel; (c) the sole issue presented to the jury, and stated to them at the beginning of the case, was whether the signature of the endorser McDonald on the check in question was in fact a forgery; (d) the testimony in the case to which the said instruction was presumably directed related exclusively to incidents which occurred subsequent to the handling of the check by the plaintiff, and after it had paid the same and sustained the resulting loss.

"V. In instructing the jury that: ' *   *   *   although you may not find that Carl McDonald actually signed the instrument in question, if you find he authorized, directed, empowered or consented to someone else signing his name, of course that would be just as effectually his signature as if he did it himself.   *   *   *   that would not be forgery.' the error being that the sole issue before the jury was whether Cook or McDonald endorsed the check in question, and that the issue of endorsement by Cook under the authority or direction of McDonald was not presented by the pleadings or by counsel, or within the scope of the issue submitted to the jury.

"VI. In stating to the jury, in connection with the failure of the defendant Cook to answer the complaint, that they 'must not consider whether Cook is responsible to the bank or not', thereby excluding from consideration by the jury the question whether the failure of Cook to answer the complaint could give rise to any inference as to whether

the defendant Cook endorsed McDonald's name on the check.

"VII. In stating as a fact to the jury that when the alleged forgery was brought to the attention of the Citizens Bank, that bank 'had to protect its credit because it had guaranteed and warranted the endorsements,' thereby stating a conclusion of fact and commenting on the evidence.

"VIII. In refusing to permit the defendants McDonald and Pilot Life Insurance Company to put in evidence the judgment roll in the case of *Albanie Frazier et al. v. D. Carl Cook,* the same being Judgment Roll No. 11556 in the office of the Clerk of Court for Darlington County, and to produce other evidence for the purpose of establishing a general scheme and design on the part of Cook to obtain possession of funds belonging to his clients.

"IX. In refusing to permit the defendants, McDonald and Pilot Life Insurance Company to prove by a witness profered to the Court that the defendant Cook, as attorney for such witness, had endorsed the name of the witness on a check payable to him, without authority, and had collected the proceeds thereof without accounting for the same until long afterwards upon demand made.

"X. In refusing to permit the defendants McDonald and Pilot Life Insurance Company to offer other evidence of other acts and transactions of the defendant Cook of a character similar to that charged against such defendant in the present case."

With reference to the question made by the first exception, the trial Judge charged the jury: " * * * the plaintiff alleges that it holds a note or check, that the check was made and endorsed and properly endorsed. The defendant McDonald denies that. So at the outset it is the duty of the plaintiff to prove to you by the preponderance or greater weight of the evidence that the check was in the possession of the plaintiff properly and legally endorsed. McDonald comes into Court and says not only that he did

not endorse the check, but he goes a step further and says the check was endorsed by some other person without his knowledge or consent, and he goes further and says the endorsement was a forgery. So Mr. McDonald has alleged that by reason of there being a forgery he is entitled to certain relief against Cook and he is entitled not to be forced by the Pilot Life Insurance Company to pay the check. *Therefore he assumes the burden of proving by the preponderance or greater weight of the evidence the allegations he has made in his answer and for which he has assumed the burden of proof."* (Emphasis added.)

By the italicized portion of the foregoing quotation from the charge, the jury were in effect instructed that the plaintiff could recover without proving the genuineness of the signature of McDonald by a preponderance of the evidence, even though that was the sole issue for the jury to pass upon.

In 8 C. J., § 1316, Sub-sec. e, page 1010, we find the following discussion: "It is remarkable, in view of the large number of decisions as to presumptions as to ownership, that there is very little direct authority as to whether plaintiff sustains the burden of proof as to ownership, where put in the issue, by merely producing the instrument and relying on the presumption of ownership arising therefrom, or whether he must go further and prove his title, as for instance by proving the signature of the transferor. It is generally held that, where the endorsement or assignment to plaintiff is properly put in issue, by a plea of want of ownership or the like, plaintiff must prove the indorsement or assignment. However, by statute in some states making possession *prima facie* evidence that the instrument was indorsed by the person by whom it purports to be indorsed, plaintiff need offer no evidence as to the indorsement to make a *prima facie* case; *but even under such a statute, where the defense is that the indorsements were forgeries, the holder has the burden of proving the genuineness of the*

*indorsements by a preponderance of the evidence."* (Emphasis added.)

And in 11 C. J. S., Bills and Notes, § 659, Sub-sec. b, page 92, we find: "If the ownership of the instruments on which plaintiff brings his action is properly put in issue, the burden of establishing ownership is on plaintiff, * * * and this burden rests on him throughout the case. Accordingly, * * * it is generally held that the burden of proving such matters is on plaintiff where by proper pleading, as by a plea of want of ownership, or the like, defendant puts in issue the indorsement, assignment, or delivery to plaintiff."

In Section 6810 of the Code of Laws of South Carolina for 1942 it is provided that: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. * * *"

In the case of *Hardison v. Jones,* 196 N. C., 712, 146 S. E., 804, it was held that a plaintiff suing on notes has the burden of proof on the issue of execution where the execution is denied by the defendant. Similarly, in the Georgia case of *Buena Vista Loan & Savings Bank of Stockdale,* 59 Ga. App., 798, 2 S. E. (2d), 158, it was held that on the trial of a suit by the transferee against the bank as a maker of the check, to recover thereon, after the bank's refusal to pay it, where the defendant bank in its plea denied the genuineness of the endorsement of Salem China Company, and the check was not payable to bearer, the burden of proof was on the plaintiff to establish his title to the check by showing the genuineness of the endorsement of Salem China Company. See, also, the case of *Carrier v. Hague,* 9 S. C., 454, at page 459, in which it was held, that a general denial can be pleaded in an action on a note, when the defendant can show at the trial that he never

executed or delivered the note in the legal sense of those terms. It was held in that case that "the pleading leaves upon the plaintiff the *onus probandi,* * * *."

The appellants, in their brief, cite the case of *Murphy.v. Skinner's Estate,* 160 Wis., 554, 152 N. W., 172, Ann. Cas., 1917-A, 817, to.support the contention that although the Negotiable Instruments Act contains a provision to the effect that possession of the instrument shall be presumptive evidence that the same was endorsed by the persons by whom it purports to be endorsed, and that the holder of the instrument by showing his possession thereof makes a *prima facie* case against the endorsers, where the defense is that the endorsement was a forgery, the holder has the burden of proving the genuineness of the endorsement by a preponderance of the evidence. See, also, 5 Uniform Laws Annotated, 1936 Ed., page 170 *et seq.*

In view of the foregoing authorities, the genuineness of the signature of Carl McDonald on the check, as endorser, not only being in issue but being the sole jury question in the case, we are of the opinion that the trial Judge was in error in charging the jury that Carl McDonald, one of the defendants, assumed the burden of proving the allegations in his answer with respect to this issue.

The respondents contend that the appellants are estopped to predicate error on the instructions of the trial Judge regarding the burden of proof by reason of their acquiescence therein and by their acceptance of the privilege of opening and closing in argument.

At the outset of the trial, before any testimony had been taken, the trial Judge stated to the jury the issue in the case. The following colloquy then took place between the trial Judge and counsel for the appellants:

"The Court: Mr. Want, I rule as a matter of law that you' having set up your defense and stated that the check is a forgery that you have a right to open and reply as to

evidence and argument. The burden is on you to establish that by the preponderance of the evidence. Is that your understanding, gentlemen?

"Mr. Want: I thought the plaintiff would prove its case and then it would be determined whether or not our defenses need to be enforced.

"The Court: Of course the plaintiff will prove its case first then.

"Mr. Want: We are willing to open and close but we don't want any question to arise as to our rights."

The case then proceeded with the plaintiff opening and closing in the taking of the testimony.

It must be borne in mind that the situation here is ██ not that which exists when the Court inadvertently misstates to the jury the issues or facts in the case. Such an error, of course, will be taken to be waived unless it is directed to the attention of the trial Judge. Nor is it a situation in which counsel for the appellants could, during the progress of the trial, have sought a correction of the error. Counsel could not have argued to the Court, at that juncture, that its rulings on the law relative to the burden of proof were erroneous. In the case of *Coleman v. Lurey*, 199 S. C., 442, 20 S. E. (2d), 65, Mr. Acting Associate Justice Lide, speaking for this Court, said at page 447 of the State reports, at page 67 of 20 S. E. (2d):

" * * * To hold otherwise would impose upon counsel the rather delicate and difficult task of presenting exceptions to the charge before the retirement of the jury, a practice which we have not adopted, although it does prevail in some other courts and jurisdictions. We think that the law was clearly and correctly expressed in the opinion of this court delivered by Mr. Justice Carter in the case of *Steinberg v. South Carolina Power Company*, 165 S. C., 367, 163 S. E., 881, 883, as follows: 'While it is the duty of counsel to follow the judge's charge and at the conclusion of the charge to call to the judge's attention any misstate-

ment of issues, in order that the court, jury, and opposing counsel may not be misled, and to request a fuller charge on any phase of the law, if in the opinion of counsel a fuller charge is necessary to enable the jury to render a correct verdict and do justice between the litigants, it is not incumbent upon counsel, in order to protect the rights of his client, to call the judge's attention to what counsel considers an erroneous statement of the law applicable to the case. To make such requirement might place counsel in an embarrassing position.' "

Nor can we agree with respondents that the appellants were not only not prejudiced, but were actually benefitted by the Court's instructions to the jury as to the burden of proof which, as we have seen by the foregoing colloquy which took place in the presence of the jury, gave the appellants the right to open and conclude the arguments, in view of the fact that such a ruling, and such a right, placed the burden of proof upon the appellants, and prejudiced them, in our opinion, by an adverse charge to the jury. In view of the statement made to the Court by counsel for appellants, which we have quoted in the foregoing colloquy, we do not think it can be said that the appellants voluntarily assumed the burden of proof or that they waived any right when they bowed to the ruling of the Court. Therefore, for the foregoing reasons, the first exception of the appellants is sustained.

We also sustain the second exception, which specifies error on the part of the Court in submitting conflicting instructions to the jury as to the burden of proof. The following instructions were also given, in addition to those which we have quoted, *supra*:

" * * * whoever alleges anything in a Court of justice, the burden is upon that person or corporation to prove that which that person or corporation alleges.

* * * * *

"Of course, Mr. Cook comes along and says the signature is genuine. He denies that which Mr. McDonald says in his answer. So that places the burden, as I say, in each case upon him who alleges that which is alleged as a fact and it must be proven by the person or corporation alleging it by the preponderance or greater weight of the evidence."

Also, when he submitted the issue to the jury at the opening of the trial, the Judge instructed the jury: "Now, in considering the matter, he who alleges something must prove it, the burden is on him to prove it by the preponderance of the evidence, * * *. That is, whenever a man alleges something against another man it is his duty to prove that by the preponderance or greater weight of the evidence."

In the light of the sole issue which the jury had to consider, it cannot appear otherwise to us than that the instructions which we have quoted above and earlier in this opinion were confusing to the jury, in that some of the instructions place the burden of proof upon the appellants, while others place it upon the respondents. In one place the jury were instructed that the plaintiff must prove "by the preponderance or greater weight of the evidence that the check was * * * properly and legally endorsed." It is patent that a forged endorsement could not be a proper and legal endorsement. Such a charge would seem to place the burden of proof upon the plaintiffs, and yet, as we have seen, in another part of the charge the burden is specifically placed upon Carl McDonald, one of the defendants.

In 64 C. J., 1001, § 770 (c), we find the following discussion: "Under the rules already stated, a correct instruction on the burden of proof will cure the error in another instruction only when the instructions, as a series, state the law correctly. Thus an erroneous instruction as to the burden of proof cannot be cured by a conflicting instruction which correctly states the law, nor by an instruc-

tion on an entirely different matter, nor by an instruction which accentuates the error."

See, also, ·64 C. J., 983, § 763 (4). And on the subject of conflicting instructions generally, as constituting reversible error, see *Grant v. Director General,* 114 S. C., 89, 102 S. E., 854; *Boney v. Cornwell,* 117 S. C., 426, 109 S. E., 271; *Love v. Turner,* 71 S. C., 322, 51 S. E., 101.

Appellants state in their brief that their third exception is abandoned, and it, therefore, requires no consideration here.

The eighth, ninth, and tenth exceptions, which we shall next consider, make, in our opinion, the following question for our determination: Did the trial Judge err in excluding testimony, offered by the appellants for the purpose of showing forgeries and frauds on the part of the defendant, Cook (similar and related in nature and kind to the illegal transactions sought to be shown here), in his like dealings with persons who were not parties to this particular cause of action? An answer to this question requires a consideration of the kind of testimony which was sought to be introduced, and the purpose for which it was intended, and for that reason we quote from the proceedings at the trial during the course of the cross examination of the defendant, Cook. While the jury were temporarily excused, the following colloquy for the appellants:

"Mr. Want: I have a right to ask this witness if it is a fact that in many instances in Darlington he has represented certain litigants, he has received checks for them on which they charge he forged their names and he made the checks good. Not only that, in numerous other cases he is being charged by clients with various acts of withholding money.

"The Court: 'Although a witness, including a defendant, may be asked about any matter which may tend to involve his character on the conviction of any crime involving moral turpitude, he can't be asked about charges by other

people unless they culminate in a conviction. * * * I rule that you have no right to go into other charges against this man unless they culminate in conviction. I don't think you can cross examine him on collateral matters. If he says 'No' that is all you can do.

\* \* \* \* \*

"I thought you were trying to cross examine him as to credibility.

"Mr. Want: No, sir, as to similar instances.

"The Court: Accusations of similar instances?

"Mr. Want: That is the way it is expressed.

\* \* \* \* \*

"The Court: I don't think the rule ever goes to the point that you will permit accusations of third parties as to the character or conduct of a person to be brought into evidence. * * * I rule that the credibility of a witness can only be attacked in two ways; one by his general reputation for truth and veracity in the community, and by the conviction of an infamous crime which disqualifies him.

"Mr. Want: I would like to state in the absence of the jury the particular character of proof I want to prove. We want to prove in one or more specific cases it is charged by clients of Mr. Cook that he wrote their names on the backs of checks payable to them and after employment of other counsel and the charge of forgery was made, he made those good. In the other class of cases, under a different set of circumstances, Mr. Cook held money, and other attorneys being employed and making those charges, some in Court and some out of Court, the money was paid by Mr. Cook.

"The Court: There is no contention that any of those cases resulted in indictment or conviction for forgery?

"Mr. Want: No, sir.

"The Court: There is no contention that any resulted in adjudication by the Court?

"Mr. Want: One goes that far where it is specifically charged in an order signed by Judge Dennis that various fraudulent practices were resorted to by Mr. Cook. The order orders him to pay some eight or nine hundred dollars.

"The Court: Have you fully stated what you want to prove?

"Mr. Want: Yes.

"The Court: The Court rules that the testimony is not relevant or competent in this case, and the Court calls attention to the case of *Plumley v. Gosnell.* That case is found in 175 S. C., 30, 178 S. E., 261 [263].

\*   \*   \*   \*   \*

"Mr. Want: The class of cases which I desire to bring to the attention of the Court is illustrated by the case of *Albert Frazier and others v. D. Carl Cook and others,* embraced in judgment roll 11556, which judgment roll is offered in evidence and excluded by the Court."

The respondents argue that the excluded testimony was unrelated to any transaction involved in this case, and that it was therefore irrelevant and incompetent to have any bearing on the allegations of forgery in the present action. The trial Judge, as we have seen, founded his ruling upon the decision of this Court in the case of *Plumley v. Gosnell, supra,* which, in our opinion, is not applicable to the present case in which, as we have seen, counsel for the appellants made it clear that the testimony was not offered for the purpose of testing the credibility of the witness, as was done in the case of *Plumley v. Gosnell,* but for the purpose of showing other instances of similar conduct on the part of the defendant, Cook. In the *Plumley case,* the trial Judge ruled: "I don't think those things that have been brought out would be admissible *as affecting the credibility of the witness.*" (Emphasis added.) The defendant appealed to this Court from that ruling, and this Court, in affirming the judgment of the trial Court, said that "the appeal in behalf

of the defendant relates solely and entirely to the admissibility of testimony on cross-examination for the purpose of testing the credibility of the witness * * *." We are here confronted with a very different situation.

Under a stipulation of counsel, the judgment roll in the case of *Albanie Frazier v. D. Carl Cook et al.,* being judgment roll number 11556 in the office of the Clerk of Court for Darlington County, is to be considered by this Court to the same extent as if it were printed in the Transcript of Record, subject to the respondents' objections as to relevancy and admissibility. That case discloses that Cook was charged with the improper withholding of funds of his clients, and with making improper charges against such clients by way of alleged fees. The decree orders Cook to pay over to his clients the sum which the Court found was improperly withheld by him. Thus it appears that the appellants sought to show by the rejected testimony that certain clients of Cook had charged him with forgery, and that, following such charges, he had paid the amounts of the instruments involved, and that in tendering the judgment roll in the civil proceedings which had been brought against him by Frazier, the appellants sought to show an adjudication by the Court that Cook had obtained and illegally withheld funds of clients other than Carl McDonald.

In 20 Am.. Jur., 281, Paragraph 303, we find the following discussion: "There are limitations upon the general rule excluding evidence regarding collateral facts, acts, and conduct. Proof of the existence of other facts, the occurrence of other events, and acts or conduct upon other occasions which have a relevant and material bearing upon a fact in issue before the Court are always admissible in evidence, except as its admissibility may be affected by some of the exclusionary rules of evidence. * * * The law in civil cases, as well as in criminal cases, permits proof of acts other than the one charged which are so re-

lated in character, time, and place of commission as to tend to support the conclusion that they were part of a plan or system or as to tend to show the existence of such a plan or system. * * * Where several forgeries were a part of the same transaction and tend to show a common plan or scheme, evidence of other forgeries or alterations is admissible upon an issue of forgery or alteration in a civil case. Where fraud is an issue, evidence of other similar frauds perpetrated by the same person on or about the same time, is admissible particularly where the acts are all part of one general scheme or plan to defraud."

The foregoing principles of law as above enunciated, and as supported by the authorities cited in the footnotes to the text, become particularly pertinent to the present case in which counsel for appellants stated to the trial Judge: "As to the other alleged transaction of this defendant similar to the one involved in the present case that we wish to prove I am stating that the other transactions are recent transactions in point of time," whereupon the trial Judge held that: "The Court rules that the proximity of time has no effect upon the ruling of the Court."

In the case of *Sun Insurance Office, Limited, v. Foil,* 187 S. C., 183, 197 S. E. 683, this Court said at page 188 of the State reports, at page 686 of 197 S. E.:

"We think his Honor had in mind the general rule that the character of one may not be attacked unless he has himself put it in evidence, as that rule relates to criminal cases, or where in civil cases it relates to the credibility of one as a witness or litigant, and overlooked the rule, which is an exception to the general rule, and which holds that where the motive, the intent, the purpose of defendant is an issue involved in the case by the pleadings, the conduct and acts of the defendant in special or specific incidents or occurrences of like nature may be shown; not to attack his char-

acter, but to show that he has done acts of the very nature of that involved in the case being tried.

\* \* \* \* \*

"In our present case, in which the defendant is charged by the complaint with having converted to his use a stolen car \* \* \* knowing that it was stolen, it was competent to show by evidence that he had plead guilty to receiving, concealing and storing other cars knowing them to be stolen, not for the purpose of attacking his character, but for the purpose of showing the motive, intent, and design in the instant matter."

In the foregoing case this Court cites and quotes from numerous authorities to sustain its decision.

In the case of *State v. Allen,* 56 S. C., 495, 35 S. E., 204, 205, the defendant was charged with the forgery of a school voucher. The State offered in evidence other vouchers alleged to have been forged by the defendant on other dates. This Court there cited with approval the following language from Wharton on Criminal Law, Volume 1, Section 715: "As has been elsewhere shown \* \* \*, if a party is charged with knowingly making, holding, or passing forged instruments, and the fact of his possession of the forged instruments is shown, but his knowledge of their character is disputed, it is admissible to prove that about the same time he held or uttered similar forged instruments to an extent which makes it improbable that he was ignorant of the forgery. Nor, as it is now ruled, does it exclude such evidence if the offense then introduced had been the subject of another indictment, nor that it occurred subsequently to that under trial, if the two appear to be part of a common system."

In that case this Court also cited with approval the following language from 13 Am. & Eng. Ency. of Law, 2d Edition, page 1110: "On a trial for uttering forged paper it is competent to show, for the purpose of proving knowledge and guilty intention, that at or about the time of utter-

ing the instrument the defendant had in his possession or uttered other forged instruments of the same description. An acquittal under an indictment for forging or uttering a particular forged paper will not preclude the state from proving the fact of the possession or uttering of such forged paper in another prosecution against the same party for a crime of the same character."

See also the clear discussion of this principle contained in the opinion of this Court delivered by Mr. Justice Marion in the case of *State v. Lyle,* 125 S. C., 406, 118 S. E., 803, 807, in which the following language from the case of *People v. Molineux,* 168 N. Y., 264, 61 N. E., 286, 62 L. R. A., 193, was cited with approval: "Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish, (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; * * *."

And in the very old case of *State v. Houston,* 1 Bailey, 300, at page 301, 17 S. C. L., 300, at page 301, it was said: "* * * It is true, as a general rule, that when a man is on his trial for one offense, it is not competent to prove that he has committed other distinct and substantive offenses. But in such cases as the present, it is competent, in order to prove the scienter, to show that the prisoner has passed other counterfeit notes of a similar character, and that he has such in his possession; for although these may be the foundation of other prosecutions, yet they afford evidence, and sometimes very strong evidence, of the knowledge of the falsity of the paper, on which the indictment is founded. They may be considered, in fact, in such cases, as a part of the same act; for what is the charge? That the prisoner passed the note, *knowing* it to be counterfeit. Now his having a number of others, of the same description,

is evidence of a general guilty purpose, of which the act under consideration is only a part."

See, also, the very similar case of *First National Bank v. Barker,* 75 W. Va., 244, 83 S. E., 898, in which it was held that evidence of the person's perpetration of criminal or fraudulent acts similar to those sought to be proven against him is admissible, when it indicates a scheme on his part including the act in question. Also see the case of *Ely v. Gray,* 125 Va., 708, 100 S. E., 660, it was held that in an action on a note, where the defendant asserted that it was a forgery, and claimed that it was forged by the plaintiff in pursuance of a general scheme of fraud, great latitude of proof is allowed, and evidence that the plaintiff had forged other notes is admissible to establish his general scheme.

In the instant case, the appellants sought to elicit testimony from the defendant, Cook, himself, as well as from other witnesses and from Court records, to establish facts relating to transactions related in nature and in point of time to the transactions which were under investigation. Such testimony which was offered and excluded was within the scope of the principles discussed in the foregoing authorities, and we therefore hold that the trial Judge erred in excluding such testimony. Appellants' eighth, ninth, and tenth exceptions are therefore sustained.

The specification of error in the fifth exception is grounded upon that portion of the charge in which the trial Judge instructed the jury that even if they found that Carl McDonald did not actually sign the instrument in question, there would still be no forgery if the jury found that McDonald authorized, directed, empowered or consented to some one else signing his name, in which latter event it would be just as effectually his signature as if he did it himself. Appellants argue that such an instruction was beyond the scope of the issue submitted to the jury.

In this contention we think the appellants are in error. In the agreed statement of facts in the Transcript of Record,

it is stated: "By stipulation of counsel the matter was submitted to the jury on the specific issue: 'Is the signature of Carl McDonald on the check of Pilot Life Insurance Company a forgery? * * * You answer that "Yes" or "No". * * *'" The record of the proceedings bears out the fact that this was the issue actually submitted to the jury by the trial Judge. We find no prejudicial error in the charge in this respect. Cook had testified that when the check of the insurance company was delivered to him, he took it to the hotel in Asheville where Mr. McDonald was staying; that McDonald was not in the hotel at the time, and that Cook left the check in an envelope, addressed to McDonald, with a clerk in the hotel, for delivery to McDonald, and that a few days thereafter, the check was returned to Cook, by mail, bearing McDonald's name thereon. In his charge in this respect, we do not think that the trial Judge was commenting upon the testimony. Since the issue in the case was whether or not the signature of McDonald was a forgery, it was proper for the trial Judge, under the issue previously agreed upon by counsel, and under the testimony, to give the jury a statement of the law pertaining to forgery. The fifth exception is therefore overruled.

Nor can we see that the appellants were prejudiced by the instruction to the jury that when the alleged forgery was brought to the attention of the Citizens Bank of Darlington, that the bank "had to protect its credit because it had guaranteed and warranted the endorsements." We think this was indubitably a statement of the law relating to negotiable instruments, and we cannot sustain the contention of the appellants that it was a conclusion of fact or a prejudicial comment on the evidence.

In the case of *Life Insurance Company of Virginia v. Edisto National Bank of Orangeburg et al.*, 166 S. C., 505, 165 S. E., 178, this Court said at page 514 of the State reports, at page 181 of 165 S. E.:

"The Edisto National Bank accepted from, or through, the National Loan & Exchange Bank the check issued by the Life Insurance Company of Virginia to Susie Castleberry, upon the forged indorsement of the payee, and paid out the proceeds of the collection upon the order of the person who deposited the check. There can be no doubt of its liability to make good to the person, or party, entitled thereto, the loss he or it has sustained.

"The Edisto Bank placed its indorsement on the check and guaranteed all prior indorsements. If, therefore, the Columbia Bank were held liable to the insurance company, it would have its recourse upon the Edisto Bank."

For similar reasons, we cannot sustain the position of the appellants in their contention that the trial Judge erred in instructing the jury, in connection with the failure of the defendant Cook to answer the complaint, that they "must not consider whether Cook is responsible to the bank or not." Just before the charge on this subject which appellants consider to be prejudicial, the trial Judge had stated to the jury: "* * * Mr. Cook doesn't put in an answer to the original complaint. In other words, he elects to let the bank take what we call a default judgment against him. That was, of course, his privilege and right. He could have plead otherwise if he saw fit, but he did not. He elected to state that he passed the check to the bank and got credit for it; therefore, he was responsible on his endorsement to the bank. * * *."

We cannot conclude that the charge that the jury must not consider whether Cook was responsible to the bank, was a charge on the testimony. As in our disposition of the fifth exception, we think this was a charge, not on the facts, but upon the law respecting persons in default, and upon an applicable phase of the law relating to negotiable instruments, since, when Cook endorsed the check, he thereby guaranteed the prior endorsement. As to the suit by the bank, Cook was in default, and, we think

the trial Judge correctly instructed the jury as to the law governing his status as such and as an endorser. Therefore the sixth and seventh exceptions of the appellants are overruled.

The last question remaining to be determined relates to whether it was reversible error on the part of the trial Judge to instruct the jury upon the question of whether Carl McDonald was estopped to deny his endorsement of the check, in view of the fact that the only issue to be determined by the jury was whether or not that endorsement was a forgery. The charge of the trial Judge with reference to estoppel follows in part: "Another principle of law which might have application to this case as you view the testimony is what we commonly call the principle of estoppel. That means that where a person fails to act or where a person acts in a certain given circumstance so as to mislead another person or where a person by silence, where he should speak doesn't speak, the law says that person cannot later come in and deny what he has done before.   *   *   *"

Immediately after having charged upon the law of estoppel, the trial Judge instructed the jury: "When you boil a case down and get rid of all these various and sundry pleadings which are voluminous it reduces the question down to one thing and only one. Is the signature of Carl McDonald genuine or is it a forgery? That is all it amounts to."

Under the foregoing charge with reference to estoppel, despite the fact that counsel on both sides, and the trial Judge, had agreed that the only issue was whether or not a forgery had been committed, the jury could have found, irrespective of the sole issue, that McDonald was liable because he was estopped to question his signature.

In the case of *Caines v. Marion Coca-Cola Bottling Company et al.*, 196 S. C., 502, 14 S. E. (2d), 10, this Court said at page 505 of the State reports, at page 11 of 14 S. E. (2d) : "* * * The general rule is well settled that instructions should be confined to the issues made

by the pleadings and that an instruction which is based on an issue not raised by the pleadings is erroneous." (Citing authorities.)

Irrespective of whether estoppel, in order to be relied upon, was pleaded, or required to be plead in this case, it was not relied upon, nor was it an issue, and, if any thought of relying upon it had ever been entertained by respondents, it was abandoned when counsel for all parties agreed to restrict the issue for the jury to one question. Under the foregoing decision of this Court, we think the doctrine of estoppel should not have been charged. Furthermore, we think the charge upon that doctrine was a contradiction of the agreed issue, and was in conflict with the part of the charge which immediately followed it, and was necessarily confusing and misleading to the jury.

In this same connection, the trial Judge charged the jury: "* * * In other words, if I tell you something or give you by my acts grounds to believe that I am doing or not doing certain things, and you act upon those grounds to your detriment, the law says I am estopped, I can't come and say I didn't intend to do that. That is a question of fact for you to determine. And the question of estoppel by silence, that is purely a question of fact for you to determine."

Aside from the fact that we consider such a charge beyond the scope of the issue, we do not think the testimony in the case was such as to entitle the respondent to the benefit of this charge. The testimony upon which this part of the charge was apparently predicated, related entirely either to incidents which occurred subsequent to the handling of the check by the plaintiff bank, and after it had paid the same and sustained the resulting loss, or else to acts prior thereto to which it was not a party and upon which there is no testimony that it relied. It is true that there is testimony as to the dealings which took place between the defendants, as the result of which the check

was issued. But there is no testimony that the respondent bank knew of such dealings which occurred before the check was issued, and thus no estopped can arise in favor of the bank as a result of such incidents. The testimony would indicate that when the bank acted to its prejudice in paying the check on the strength of the endorsement of McDonald's name, it did so entirely upon the implied representation of Cook that McDonald's endorsement was genuine. At that time, the bank had had no contacts with McDonald, or, apparently, any information respecting the origin of the check or the circumstances leading to its issuance. In the case of *Cannon v. Baker et al.,* 97 S. C., 116, 81 S. E., 478, this Court held that in that case the party claiming the benefit of the doctrine of estoppel must have acted upon the conduct complained of in such a manner as to change his position for the worse.

In the case of *Murray v. Sells,* 53 Ga., 257, cited under the subject of Estoppel in Key 97 of that subject S. C. and S. E. Digest, it was held that the fact that one has been guilty of a fraud in his dealings with one person, so that, as to this person, he is estopped, does not estop him as to another person who is not a privy in estate with the first. And in the case of *McCune v. McMichael,* 29 Ga., 312, cited in Key 55 on the same subject in the same volume, it was held that there is no estoppel unless there be proof that the party had knowledge of the acts or sayings, and relied on them, and not on his own judgment uninfluenced by them.

And in the case of *W. S. Gray Cotton Mills et al. v. Spartanburg County Mills,* 139 S. C., 223, 137 S. E., 684, it was held that the elements of estoppel are: A false representation, or the concealment of material facts; it must have been made with knowledge of the facts; the party to whom it was made must have been without knowledge or means of knowledge of the real facts; it must have been made with the intention that it be acted upon; and the party to whom

it was made must have relied on, or acted on it to his prejudice. It does not appear from the testimony in this case that any such set of facts existed between the bank and McDonald, or that the bank in any way relied upon any representations or silence on the part of McDonald before the bank sustained its loss. The fourth exception of the appellants is therefore sustained.

The appellants, in their brief, have discussed the foregoing question in connection with the question made by their fifth exception. We do not think, however, that the charge on these two questions is analogous, and therefore there is no conflict between our opposite holdings in considering these two exceptions. Although the charge as to estoppel, complained of in the fourth exception, was not embraced in the issue submitted to the jury and was therefore erroneous, the charge complained of in the fifth exception was proper because the issue for the jury was whether a forgery had been committed, and it was correct to charge the jury as to the legal elements necessary to constitute a forgery. Therefore we have discussed and ruled separately upon these two questions which the appellants had combined.

The appellants and respondents were unable to agree upon the questions which the ten exceptions made for the consideration of this Court, and have grouped the questions, as they saw them, into different categories and into a different number of questions. Therefore we have not treated the exceptions in all instances in their chronological order, nor expressed the questions in the language suggested by counsel for appellants or respondents, but have considered them in what we believe is a logical sequence.

The judgment of the Circuit Court is reversed, and the case remanded thereto for a new trial.

Judgment reversed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGES L. D. LIDE and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.