THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 CompTrust AGC, f/k/a The Carolinas Associated General Contractors Workers   Compensation Self Insurance Trust Fund, Appellant/Respondent,
 v.
 Whitakers, Inc. of Sumter and Whitakers Trust, by and through its Trustees, Edsel V. Whitaker, Sr. and Edsel V. Whitaker of whom Whitakers Inc. is Appellant
 and
 Whitakers Trust is Respondent.
 
 
 

Appeal From Sumter County
 Thomas W. Cooper, Jr., Circuit Court Judge

Unpublished Opinion No. 2007-UP-199
Submitted April 10, 2007  Filed May 3, 2007    

AFFIRMED

 
 
 
 Jerry Leo Finney and Richard C. Detwiler, both of Columbia, for Appellant-Respondent.
 Andrew Lindemann, of Columbia, for Appellant Whitakers Inc.
 M.M. Weinberg, Jr., of Sumter, for Respondent Whitakers Trust. 
 
 
 

PER CURIAM:  CompTrust AGC (CompTrust) and Whitakers, Inc. cross-appeal from a judgment in an action seeking to recover payment from an underlying workers compensation case.  CompTrust contends the trial court erred in failing to extend the liability of Whitakers, Inc. to Whitakers Trust.  Whitakers, Inc. contends the trial court erred in admitting evidence of a previous workers compensation case and failing to instruct the jury on two requested charges.  We affirm.[1]  
FACTS
The Whitaker family runs Whitakers, Inc., a company classified as a cabinet manufacturer for workers compensation purposes.  The Whitaker family also maintains a trust, Whitakers Trust, which is a separate entity set up by the Whitaker family purportedly for the benefit of the Mormon church.  Edsel Whitaker and his son Whit Whitaker are trustees.  In 1999, Whitakers Trust owned approximately one hundred rental units, along with a farm, a warehouse, and the Mayesville plant, which Whitakers Inc. leased from Whitakers Trust.  Whitakers Trust does not have any employees.  
Although classified as a cabinet manufacturer, Whitakers, Inc. was used as a real estate management service for Whitakers Trust.  Whitakers, Inc. oversaw the management of Whitakers Trust properties for a fee of $48,000 per year. 
Over the years, Whitakers, Inc. also oversaw the construction of several apartment buildings for Whitakers Trust.[2]  The Whitakers employed Judy Jernigan at various times over the course of ten years.  Jernigan is a friend of the Whitaker family, and began her working relationship with them on a contractual basis while employed full-time with a construction company.  In the early years, Jernigan worked for the Trust apartments.  She was paid in full by the Trust after completing odd jobs such as landscaping, cleaning around the apartments, getting the apartments ready to be shown to potential tenants, and painting a pool at one of the apartment complexes.  During the relevant period for purposes of this appeal, Jernigan was employed by Whitakers, Inc. to work on an apartment project called Jernigan Trail.  Jernigan Trail is a twenty-four unit apartment building Whitakers, Inc. constructed for Whitakers Trust.  Jernigan performed various duties at the job site, including answering the phone, receiving and signing for deliveries, sending and receiving faxes, making sure that subcontractors showed up for work, and escorting various county inspectors out to the job site.  
On July 8, 1999, Jernigan was injured on this job site while using a lull to unload roof trusses from a delivery truck.  Subsequently, Jernigan filed a workers compensation claim with CompTrust, Whitakers Inc.s workers compensation carrier.  CompTrust listed Jernigan as a clerical employee.  CompTrust provided workers compensation benefits to Jernigan; however, upon receiving Jernigans claim for workers compensation, CompTrust performed an investigation and determined that Jernigan was either not an employee of Whitakers, Inc. or had been misclassified as a clerical employee.  CompTrust paid Jernigans workers compensation benefits and medical treatment under a reservation of rights.  
CompTrust instituted this action, which included both legal and equitable claims, against Whitakers, Inc. and Whitakers Trust, seeking to recover funds it paid as a result of Jernigans workers compensation claim.  The jury returned a verdict in favor of CompTrust and against Whitakers, Inc. for breach of contract, breach of contract accompanied by a fraudulent act, and negligent misrepresentation.  CompTrust was awarded $98,468.14 for reimbursement of workers compensation benefits, $120,914.04 in total medical benefits, $15,952.00 in additional expenses, and $150,000.00 in punitive damages.  The trial court did not submit CompTrusts equitable claims against Whitakers Trust to the jury.  Post trial, the trial court denied Whitakers, Inc.s motion for a new trial, granted Whitakers, Inc.s  motion for a new trial nisi (reducing the additional expenses from $15,952.00 to $4,074.40), and denied CompTrusts equitable causes of action against Whitakers Trust.  Both parties appeal.  
DISCUSSION
I.   CompTrust Appellate Issues 
As CompTrust frames the issues, its cause of action against Whitakers Trust for equitable subrogation turns on whether Whitakers Trust was either the de facto employer or statutory employer of Jernigan.[3]
Concerning the argument that Whitakers Trust was the de facto employer of Jernigan, CompTrust cites no authority, case law or otherwise, to support this contention.  CompTrust merely refers to various dealings of the Whitakers and concludes that Whitakers Trust is nothing but a sham.  In the absence of citation to supporting legal authority, we must consider this issue abandoned.  See Fields v. Melrose Ltd. Pship, 312 S.C. 102, 106 n.3, 439 S.E.2d 283, 285 n.3 (Ct. App. 1993) (stating issues raised in a brief but not supported by authority are deemed abandoned and will not be considered on appeal).
Turning to the statutory employment argument, we concur with the trial court that CompTrust has failed to prove Whitakers Trust was the statutory employer of Jernigan.  
Section 42-1-400 of the South Carolina Code (1976) provides that an owner is liable to a worker of a contractor or subcontractor who is injured while performing or executing any work that is a part of the owners trade, business or occupation.  Specifically, this section states:

 When any person, in this section and 42-1-420 and 42-1-430 referred to as owner, undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and 42-1-420 to 42-1-450 referred to as subcontractor) for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

S.C. Code Ann. § 42-1-400.  Whether a worker is a statutory employee is a question of law for the court.  Glass v. Dow Chem. Co., 325 S.C. 198, 202, 482 S.E.2d 49, 51 (1997).   Our courts have outlined three factors to consider when determining whether the activity constitutes work which is part of the owners trade, business, or occupation: (1) whether the activity is an important part of the trade or business, (2) whether the activity is a necessary, essential, and integral part of the trade, business or occupation, or (3) whether the activity has been performed by employees of the employer.  Id. at 201, 482 S.E.2d at 50.  
The evidence shows Whitakers Trust hired Whitakers, Inc. to perform both management and construction duties.  The record indicates Jernigan was hired to work mainly in construction, although she also had clerical duties.[4]  Jernigan was injured while performing her construction duties.  Therefore, the question we must determine is whether Whitakers Trust was in the trade, business, or occupation of construction.  See Harrell v. Pineland Plantation, Ltd., 337 S.C. 313, 322, 523 S.E.2d 766, 771 (1999) ([A]n owner should not be able to avoid workers compensation liability by subcontracting out the work of their business.).
The record is not clear on this critical issue.  It appears that at the time of Jernigans injury, Whitakers Trust owned about one hundred apartment units.  We are not certain how many of these units were constructed by Whitakers Trust.  Part of our uncertainty is based on the evasive testimony given by the Whitakers.  Nevertheless, we feel it would be inappropriate to speculate by holding that construction was an important or integral part of the business of Whitakers Trust. 
Whitakers Trust, through its trustees, contracted work out to various professionals.  Here, Whitakers Trust hired Whitakers, Inc. to build apartments.  The evidence establishes that Whitakers, Inc. employed Jernigan and that Whitakers, Inc. was in the business of constructing residential dwellings.  The record does not establish that Whitakers Trust was in the construction business; rather, Whitakers Trust was the legal vehicle for holding title to various properties.  It was Whitakers, Inc. that engaged in the construction and management oversight of the properties.  We fully recognize the improper conduct and gamesmanship of Whitakers, Inc. vis-à-vis its workers compensation policy with CompTrust, but this nefarious conduct does not warrant the leap that Whitakers Trust is the statutory employer of Jernigan.  
A number of cases applying the Glass factors are analogous to the case at hand.  See Wilson v. Duke Power Co., 273 S.C. 610, 616-17, 258 S.E.2d 101, 104-05 (1979) (finding construction work performed for owner-developer of property was not part of his trade, business or occupation, and he was therefore not a statutory employer); see also Raines v. Gould, Inc., 288 S.C. 541, 543, 343 S.E.2d 655, 657 (Ct. App. 1986) (stating that ordinarily, in determining workers compensation employee-employer relationship, construction work, such as building a factory structure or making electrical installations, is considered outside the trade or business of a manufacturer).   Nor may we discern from the record that this is a case where, by size and nature of its business, Whitakers Trust is accustomed to carrying on a more or less ongoing program of construction.  See Raines, 288 S.C. at 545, 343 S.E.2d at 658 (If however a business by its size and nature is accustomed to carrying on a more or less ongoing program of construction . . . construction work delegated to a contractor may be considered a part of its trade or business.).  
In asserting the existence of a statutory employer relationship under section 42-1-400, CompTrust accepted the burden of setting forth evidence to prove its case.  We find, as did the trial court, that CompTrust has failed to meet its burden of showing Whitakers Trust was in the trade, business, or occupation of construction under the Glass factors.  Because Whitakers Trust is not in the business of construction, we find no error in the holding of the trial court that Jernigan was not a statutory employee of Whitakers Trust.
II.  Whitakers, Inc. Appellate Issues 
A.  Admission of Evidence 
Whitakers, Inc. contends the trial court erred in allowing into evidence the fact that another insurance company successfully sued Whitakers, Inc. in a previous lawsuit for misclassifying employees for workers compensation purposes.[5]  We disagree.  
The trial court has considerable latitude in ruling on the admissibility of a defendants prior bad acts.  Hanahan v. Simpson, 326 S.C. 140, 155-56, 485 S.E.2d 903, 911 (1997).  Evidence is relevant and admissible if it tends to establish or make more or less probable some matter at issue and to bear directly or indirectly thereon.  Assoc. Mgt., Inc. v. E.D. Sauls Constr. Co., 279 S.C. 219, 221, 305 S.E.2d 236, 237 (1983).  Absent a clear abuse of discretion amounting to an error of law, the trial courts ruling will not be disturbed on appeal.  Peterson v. Natl R.R. Passenger Corp., 365 S.C. 391, 399, 618 S.E.2d 903, 907 (2005).  
In finding the evidence relevant and admissible, the trial court cited Rule 404(b), SCRE, which governs the admissibility of other crimes, wrongs, or acts.  The trial court reasoned that the information regarding the prior lawsuit was admissible to show Whitakers, Inc.s classification of Jernigan as a clerical employee was not the result of a mistake or accident, but rather showed intent to misclassify.  Rule 404(b) states:  

 Other Crimes, Wrongs, or Acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.[6]

 Even though such evidence may be relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  Rule 403, SCRE.  
At trial, one of the claims brought against Whitakers, Inc. was for breach of contract accompanied by a fraudulent act.  To prove breach of contract accompanied by a fraudulent act, a plaintiff must show, among other things, a fraudulent intent relating to the breaching of the contract.  Floyd v. Country Squire Mobile Homes, Inc., 287 S.C. 51, 53-54, 336 S.E.2d 502, 503-04 (Ct. App. 1985). Fraudulent intent is normally proved by circumstances surrounding the breach.  Id. at 54, 336 S.E.2d at 503-04.
The record shows that Jernigan was misclassified as a clerical worker.  Whitakers, Inc.s claims to the contrary find no traction in this record.  Several witnesses, including Jernigan, testified Jernigan was misclassified as a clerical worker.  Whether Whitakers, Inc. mistakenly or intentionally misclassified Jernigan was clearly relevant.  The measuring stick for Rule 403 admissibility is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.  The trial court acted well within its discretion in admitting the prior lawsuit in which Whitakers, Inc. misclassified an employee.  Moreover, the evidence against Whitakers, Inc. on this issue was overwhelming even without evidence of the prior lawsuit.  
B.  Jury Charge 
Whitakers, Inc. contends the trial court erred in failing to charge the jury regarding the laws and regulations concerning an employers ability to stop payment of compensation benefits under the South Carolina Workers Compensation Act.  Whitakers, Inc. sought these charges to show that CompTrust could have moved to stop payment to Jernigan once it had completed its investigation into the improper classification of Jernigan.  We disagree.  
When instructing the jury, the trial court is required to charge only the current and correct law of South Carolina.  Cohens v. Atkins, 333 S.C. 345, 349, 509 S.E.2d 286, 289 (Ct. App. 1998).  When a request to charge is timely made and involves a controlling legal principle, a refusal by the trial court to charge the request constitutes reversible error.  Brown v. Smalls, 325 S.C. 547, 555, 481 S.E.2d 444, 448 (Ct. App. 1997).  A jury charge that is substantially correct and covers the law does not require reversal.  Burroughs v. Worsham, 352 S.C. 382, 392, 574 S.E.2d 215, 220 (Ct. App. 2002).  When reviewing a jury charge for alleged error, the appellate court must consider the charge as a whole in light of the evidence and issues presented at trial.  Daves v. Cleary, 355 S.C. 216, 224, 584 S.E.2d 423, 427 (Ct. App. 2003).  To warrant reversal for refusal to give a requested instruction, the refusal must have not only been erroneous, but prejudicial as well.  Cohens, 333 S.C. at 349, 509 S.E.2d at 289.  
The first Request to Charge made by Whitakers, Inc. comes from the case of Halks v. Rust Engg Co., 208 S.C. 39, 45-46, 36 S.E.2d 852, 855 (1946).  The request stemmed from a situation where a carrier disputed a claim under the theory that the claimant was no longer due compensation.  Specifically, Whitakers, Inc. requested the trial court charge the following:  

 Rule 12 of the Commission contemplates that if the insurance carrier desires to stop further payment of compensation under a temporary award, application should be made to the Commission for permission to do so.  Notice should be given to the employee.  The question can then be determined by the Commission.  Where there is a disagreement between the parties as to the right to discontinue further weekly compensation, the matter will be placed on the calendar for a hearing.  If it is determined that the carrier is entitled to discontinue further payments of total temporary disability, the question of any permanent disability or disfigurement would then be ripe for determination.  But apart from the foregoing requirements we do not think the right of a claimant to further compensation can be adjudicated without notice to him and an opportunity afforded for a hearing, if he desires to contest the issue.

Additionally, the second Request to Charge involved the duties of the workers compensation commission when a claimant is no longer due compensation.  It stated: 

 (F) After the one-hundred-fifty-day period has expired, the commission shall provide by regulation the method and procedure by which benefits may be suspended or terminated for any cause, but the regulation must provide for an evidentiary hearing and commission approval prior to termination or suspension unless such prior hearing is expressly waived in writing by the recipient or the circumstances identified in Section 42-9-260(B)(1) or (B)(2) are present.  Further, the commission may not entertain any application to terminate or suspend benefits unless and until the employer or carrier is current with all payments due.
 (B) Once temporary disability payments are commenced, the payments may be terminated or suspended immediately at any time within the one hundred fifty days if:
 (1) the employee has returned to work; however, if the employee does not remain at work for a minimum of fifteen days, temporary disability payments must be resumed immediately; or
 (2) the employee agrees that he is able to return to work and executes the proper commission form indicating that he is able to return to work.  

 See S.C. Code Ann. § 42-9-260(B) & (F) (Supp. 2006).  The trial court refused these requests and found that the subject matter of the requests was ancillary to the issues in the case, the law would only confuse the jury, and it would treat this issue as a matter of law after the jury determined the damages.  The trial court also found that the issue raised in the requested charges was not properly framed by the pleadings.  
The issue of whether CompTrust should have moved to stop payment to Jernigan once it had completed its investigation into the improper classification of Jernigan constituted an affirmative defense that must have been specifically pled under Rule 8(c), SCRCP.  Because Whitakers, Inc. failed to do so, and for the reasons stated by the trial court, there was no error in refusing these requests to charge.  
CONCLUSION
The judgment of the trial court is
AFFIRMED.
HEARN, C.J., and KITTREDGE and WILLIAMS, JJ., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  There are numerous inconsistencies in the testimony concerning Whitakers, Inc.   For example, Whitakers, Inc. disputed the contention that Whitakers, Inc. built apartments for Whitakers Trust even though Whitakers Trust acknowledged this fact it its brief.  The Whitakers also provided inconsistent testimony as to Judy Jernigans role at Whitakers, Inc.  
[3]  CompTrust seemingly raises this as two separate issues: equitable subrogation and restitution.  CompTrusts restitution claim, however, is merely a method of recovery for its equitable subrogation claim.  
[4]  The exact nature of Jernigans job was, of course, a hotly contested issue at trial.  Our reading of the record leads us to believe Jernigan was hired to be the project manager of Jernigan Trail when Whit Whitaker could not be there.   
[5]  See Wassau v. Whitakers, Inc., Op. No. 2001-UP-156 (filed February 7, 2001) (finding that the Defendant had attempted to avoid payment of workers compensation premiums by classifying certain employees as independent contractors).  
[6]  The South Carolina rule limits the use of evidence of other crimes, wrongs, or acts to those enumerated in State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923).  See also Citizens Bank of Darlington v. McDonald, 202 S.C. 244, 252, 24 S.E.2d 369, 377 (1943) (finding Lyle applicable in civil cases).