682 S.E.2d 836

**Bobby T. JUDY, Respondent,**

v.

**Ronnie JUDY, Appellant.**

**No. 4595.**

Court of Appeals of South Carolina.

Heard May 13, 2009.

Decided July 21, 2009.

Rehearing Denied Sept. 17, 2009.

Glenn Walters, Sr., and R. Bentz Kirby, of Orangeburg, for Appellant.

Capers G. Barr, III, of Charleston, for Respondent.

WILLIAMS, J.

In this civil case, we must determine whether the trial court erred in admitting evidence of a prior civil judgment obtained against Ronnie Judy (Ronnie) by a third party not involved in the present case. We affirm.

## FACTS/PROCEDURAL HISTORY

This case involves a civil suit brought by Bobby Judy (Bobby) against his brother, Ronnie, for actual and punitive

damages caused by Ronnie's alleged destruction of a corn crop planted by Bobby. The case involves several members of the Judy Family. Bobby and Ronnie are sons of the late Blease Judy (Blease). Blease also had a third son, Jimmy Judy (Jimmy). Ronnie has a son, Todd Judy (Todd).

In 1966, Blease conveyed approximately 133 acres of farmland (the Property) to Bobby and Ronnie, jointly. Some time thereafter, the Property was divided by the construction of U.S. Interstate Highway I–95, creating two fields, one on the east side of I–95 (the East Field) and one on the west (the West Field).[1] From 1966 until 2001, Ronnie farmed the entirety of the Property.[2] During this time, Bobby never received any rents or profits from Ronnie's farming operations on the Property. However, from 1999 until 2001, Bobby attempted to reach an agreement with Ronnie about the division of the Property. These attempts proved unsuccessful.

In 2001, Bobby decided to begin farming on the Property himself. Bobby contacted his nephew, Kevin Judy (Kevin) and his brother, Jimmy, to do the physical labor on the Property. On the day Bobby, Jimmy, and Kevin prepared to plant on the East Field, they were confronted by Ronnie on his tractor. After some discussion, Ronnie and Bobby reached a verbal agreement whereby Ronnie would farm the West Field, and Bobby would farm the East Field.[3]

Access to the East Field was through a small parcel of land titled to Todd. This access was blocked by Todd, which prompted Bobby to have Jimmy build a separate road to access the East Field. As a result of building the road, Bobby

---

1. At various points in the record, the East Field is referred to as "The Opening" and the West Field is referred to as "The Home Place."

2. In 1998, Ronnie conveyed his interest in the Property to his son, Todd, for five dollars. However, Todd leased the Property to Ronnie in 2000, and Ronnie continued to farm the Property while Todd maintained full employment with a local cement plant.

3. There is some confusion as to which brother was to farm which field under this verbal agreement. In his brief, Bobby states the agreement was that Ronnie would farm the East Field while Bobby would farm the West Field. However, Bobby testified the agreement was that he would farm the East Field and Ronnie was to farm the West Field. Jimmy and Ronnie also testified this was the agreement.

and Jimmy were able to continue farming and harvesting from the East Field in 2001. However, the following year, they were unable to use the new road because it had become too wet from excessive rain. In late 2002, Bobby called Todd to inform him due to the lack of adequate access to the East Field, he intended to farm half of the West Field and half of the East Field in 2003.[4] Bobby testified Todd's response to his proposed change to their agreement was, "We'll plow it up." Kevin and Jimmy planted two areas on the West Field with corn for the farm year of 2003 (the Corn Crop). The Corn Crop covered between twenty-five and twenty-six acres on the West Field.

On the evening of June 25, 2003, during his regular walk with his wife, Kevin went by the Property around 8 p.m. Kevin observed the Corn Crop, and he testified it was "beautiful[,] . . . about seven and a half to eight [feet] tall." He also noticed Ronnie's tractor, with a disk harrow attached to it, parked in front of Todd's trailer, which was immediately adjacent to the Corn Crop. Kevin testified he thought it was strange that the tractor and disk were left in the open yard because "[Ronnie] always keeps his stuff under his shed, [and] it never came out unless he was using it." On the morning of June 26, 2003, Kevin awoke to find the Corn Crop had been destroyed. Kevin noticed whoever had destroyed the Corn Crop during the night had specifically avoided a wellhead pipe that protruded eighteen inches to two feet from the ground on the West Field. The wellhead pipe was not visible under the high overgrowth of the Corn Crop. Kevin also saw tractor tracks leading from the destroyed Corn Crop back to the tractor and disk he had seen parked in Todd's yard the evening before, and the tractor and disk were full of corn husks and silkings.

On November 28, 2005, Bobby filed a civil suit against Ronnie seeking damages for the destruction of the Corn Crop. At trial, Bobby sought to introduce into evidence a similar dispute between Ronnie and Jimmy over a different piece of property (the Rumph Tract) that culminated in a lawsuit and jury verdict against Ronnie. Jimmy and Ronnie owned joint interests in the Rumph Tract, which was several miles from

---

4. That same year, Bobby filed an action to partition the Property.

the Property. The two brothers had been unable to agree on the division of the Rumph Tract, and Jimmy filed a partition action against Ronnie. While the partition action case was pending, a dam retaining a pond on the Rumph Tract was destroyed on May 5, 2003. Jimmy filed an additional lawsuit against Ronnie for destruction of the dam on November 22, 2005, and the case went to trial on April 4, 2007. The jury found Ronnie had maliciously and willfully destroyed the dam using a backhoe, causing the dam to be washed out and the pond to be destroyed.

At the trial of the present case, Ronnie objected to the admission into evidence of the prior judgment against him on several grounds. First, he argued it was not yet a final judgment, and it was, therefore, more prejudicial than probative. He also argued it was not necessary to prove the act in question. Finally, he argued there was no factual connection between the parties or the acts in the two cases, and that it was simply being offered to prove the crop destruction occurred. Bobby argued the evidence was admissible under Rule 404(b), SCRE, as evidence of prior acts admitted to prove motive, identity, intent, or common scheme or plan, and was relevant for punitive damages as evidence of similar past conduct. The trial court held:

> [T]he testimony of the prior conduct regarding the pond dam is admissible under the *Lyle*[5] exception, or the [404(b) ] exception as to identity, also as to common scheme or plan.... [T]his conduct is so bizarre, [and it] is just not the type of conduct that occurs every day.... There is no question, it's prejudicial, but in weighing that it seems ... it's very important that this type of conduct is not the type that ordinarily occurs, which would have a profound probative value on the identity, as well as a common scheme or plan. It concerns [the court] somewhat but not a whole lot that it's not necessarily a final judgment in the prior case,

---

5. In *State v. Lyle*, 125 S.C. 406, 416, 118 S.E. 803, 807 (1923), the Supreme Court of South Carolina held, "Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish, (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."

because from what [the court has] heard, if that case is reversed for some reason it will probably be on reasons that have no impact whatsoever on the jury's factual determination that [Ronnie] ... destroyed the dam in that case.

This appeal followed.

## STANDARD OF REVIEW

 The trial court's ruling to admit or exclude evidence will only be reversed if it constitutes an abuse of discretion amounting to an error of law. *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 439, 540 S.E.2d 113, 121 (Ct.App.2000).

## LAW/ANALYSIS

 "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of South Carolina, statutes, [the South Carolina Rules of Evidence], or by other rules promulgated by the Supreme Court of South Carolina." Rule 402, SCRE. Evidence meets the test of relevance if it tends to establish or to make more or less probable some matter in issue upon which it directly or indirectly bears. *Crowley v. Spivey*, 285 S.C. 397, 410, 329 S.E.2d 774, 782 (Ct.App.1985). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, SCRE; *State v. Aleksey*, 343 S.C. 20, 35, 538 S.E.2d 248, 256 (2000). Determinations of relevance are largely within the trial court's discretion, and its decision to either admit or exclude evidence will not be disturbed on appeal unless there is an abuse of discretion amounting to an error of law to the prejudice of the appellant's rights. *Merrill v. Barton*, 250 S.C. 193, 195, 156 S.E.2d 862, 863 (1967).

### 1. Admissibility of Prior Bad Acts Evidence

The trial court held the prior judgment was admissible under *Lyle* as evidence of a common scheme or plan and also for identity. Because we believe the prior judgment is rele-

vant as evidence of a common scheme or plan and its proba-
tive value outweighs its prejudicial effect, we affirm.[6]

As a general rule, evidence of a person's prior bad acts
is not admissible for the purpose of proving action in conformi-
ty therewith on a particular occasion. Rule 404(a), SCRE.
However, evidence of other crimes, wrongs, or acts may be
admissible to establish (1) motive, (2) intent, (3) the absence of
mistake or accident, (4) a common scheme or plan embracing
the commission of two or more crimes so related to each other
that proof of one tends to establish the other, or (5) the
identity of the perpetrator. Rule 404(b), SCRE; *State v.
Martucci*, 380 S.C. 232, 251–52, 669 S.E.2d 598, 608 (Ct.App.
2008) (citing *Lyle*, 125 S.C. at 416, 118 S.E. at 807); *see also
Citizens Bank of Darlington v. McDonald*, 202 S.C. 244, 265,
24 S.E.2d 369, 377 (1943) (holding *Lyle* is also applicable in
civil cases). Where the other bad acts are not the subject of
conviction, they must be proven by clear and convincing
evidence. *State v. Kennedy*, 339 S.C. 243, 247, 528 S.E.2d 700,
702 (Ct.App.2000). When considering whether there is clear
and convincing evidence, this Court is bound by the trial
court's findings unless they are clearly erroneous. *State v.
Tutton*, 354 S.C. 319, 325, 580 S.E.2d 186, 189 (Ct.App.2003).

"The law in civil cases, as well as in criminal cases,
permits proof of acts other than the one charged which are so
related in character, time and place of commission as to ...
tend to show the existence of [ ] a common plan or system."
*Citizens Bank of Darlington*, 202 S.C. at 262–63, 24 S.E.2d at
376 (citations omitted). In the case of the common scheme or
plan exception to the general rule barring admission of prior
bad act evidence, a close degree of similarity between the
prior bad act and the present case is necessary. *Martucci*,
380 S.C. at 255, 669 S.E.2d at 610. Prior bad act evidence is
admissible where the evidence is of such a close similarity to
the charged offense that the previous act enhances the proba-
tive value of the evidence so as to outweigh the prejudicial
effect. *See, e.g., State v. McClellan*, 283 S.C. 389, 392, 323
S.E.2d 772, 774 (1984) (holding testimony from victim's sisters

---

**6.** This court may affirm the trial court based on any grounds found in
the record. Rule 220(c), SCACR; *I'On, L.L.C. v. Town of Mt. Pleasant*,
338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000).

admissible in trial for criminal sexual conduct with a minor where all three sisters were attacked by defendant beginning around their twelfth birthday, late at night, at which time defendant explained the Biblical verse that children are to "Honor thy Father"); *State v. Patrick*, 318 S.C. 352, 356, 457 S.E.2d 632, 635 (Ct.App.1995) (holding evidence of a robbery in Georgia admissible in trial for burglary, armed robbery, and assault with intent to kill because in both cases, the perpetrators used the same disguises (gloves, wigs, and bandannas) and the same tools (walkie-talkies and flashlights), cut telephone lines, and generally carried the same type of weapons); *State v. Blanton*, 316 S.C. 31, 32, 446 S.E.2d 438, 439 (Ct.App. 1994) (holding testimony from other women that defendant sexually assaulted them was admissible in a trial for criminal sexual conduct with a minor because of the similarity of the prior acts to the charged offense).

■ We find the facts of the prior judgment are so similar to the present case that the probative value of the evidence outweighs its prejudicial effect. In both cases, Ronnie was embroiled in a dispute with a brother over land that was jointly titled between them. In both cases, Ronnie had refused to cooperate with each of his brothers, leading them to file a court action for partition. In both cases, substantial improvements to the land were deliberately destroyed. In both cases, the destruction of the improvements had been effected by use of heavy equipment. Finally, the two incidents occurred only a few miles from each other, and only fifty-three days apart. Although there were some slight factual differences between the prior case and this case,[7] we do not believe these differences constitute such a meaningful distinction that the trial court's admission of the prior judgment into evidence constituted an abuse of discretion.

■ Furthermore, to the extent the admission of the prior judgment may have prejudiced Ronnie, we find any prejudice was alleviated when the trial court gave a limiting instruction

---

7. In the prior case, Ronnie used a backhoe to destroy the dam, whereas here, he allegedly used a tractor to destroy the Corn Crop. Also, the prior case involved him and Jimmy, whereas this case involves him and Bobby, his other brother.

to the jury as to the proper purpose for which the evidence of the prior judgment was to be used:

> Ladies and gentlemen, you have heard testimony in this trial of . . . other acts, bad acts or improper acts allegedly committed by [Ronnie]. And [the court] tell[s] you that that testimony . . . was not given for the purpose of showing that [Ronnie] is a bad person who does bad things, and it would be improper for you to reach such a conclusion from that testimony. That testimony was allowed . . . only as to the identity of the perpetrator in this case, as to any possibly motive, and/or to the existence of a common scheme and plan, and for no other purpose.

Because the trial court specifically warned jurors not to infer from the fact of the prior judgment that Ronnie "is a bad person who does bad things," we believe any prejudice that might have otherwise resulted from the admission of the prior judgment was removed by the trial court in its curative instructions to the jury. *See State v. Dawkins,* 297 S.C. 386, 394, 377 S.E.2d 298, 302 (1989) ("[C]urative instructions usually cure any prejudice caused by the admission of incompetent evidence"). In sum, we find no error in the trial court's admission of the prior judgment into evidence.

### 2. Finality of the Prior Judgment

■ Ronnie also argues the prior judgment should not have been admitted because his appeal in the case is still pending and, if the prior judgment is reversed, its admission into evidence in this case would taint the verdict. However, Ronnie has cited no legal authority to support the argument that this was an error of law. As such, this argument is conclusory, and such arguments are deemed abandoned on appeal. *See Mulherin–Howell v. Cobb,* 362 S.C. 588, 600, 608 S.E.2d 587, 593–94 (Ct.App.2005) (finding party abandoned an issue on appeal due to failure to cite any supporting authority and making only conclusory arguments).

### 3. Relevance to Punitive Damages

As an additional sustaining ground for the trial court's admission of the prior judgment, Bobby argues the trial court

should be affirmed because the prior judgment is relevant to the issue of punitive damages. We agree.

■ Trial courts are required to conduct a post-trial review of punitive damage awards and consider the following factors: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment of the conduct; (4) existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and (8) other factors deemed appropriate. *Gamble v. Stevenson*, 305 S.C. 104, 111–12, 406 S.E.2d 350, 354 (1991)

In *Burbach v. Investors Mgmt. Corp. Int'l*, this court affirmed a judgment against a landlord for unlawful conversion of a tenant's security deposit. 326 S.C. 492, 498, 484 S.E.2d 119, 122 (Ct.App.1997). The Court held evidence of the landlord's treatment of prior tenants and his attempts to keep their security deposits was admissible to support the plaintiff's claim for punitive damages, even though the other tenants were not parties to the case. *Id.* The Court held such evidence was relevant to the first five of the *Gamble* factors, i.e., it went to the landlord's degree of culpability, the duration of his conduct, his awareness or concealment of his conduct, similar past conduct, and likelihood the award would deter the landlord and others from similar conduct. *Id.*

■ We believe here, as in *Burbach*, the evidence of the prior judgment against Ronnie is relevant to the issue of punitive damages because it pertains to at least two of the *Gamble* factors. Given the factual similarities between the prior judgment and this case discussed above, the prior judgment is evidence of similar past conduct by Ronnie that could assist jurors in assessing punitive damages. Moreover, the fact that Ronnie had committed similar bad acts on a prior occasion could inform the jury as to the likelihood that an award would deter Ronnie from similar conduct in the future. Accordingly, we find evidence of the prior judgment admissible as relevant to punitive damages.

### 4. Harmless Error

Even assuming, *arguendo,* the trial court erred in admitting the prior judgment into evidence, we believe such error was harmless.

As stated above, determinations of relevance are largely within the trial court's discretion, and its decision to either admit or reject evidence will not be disturbed on appeal unless there is an abuse of discretion amounting to an error of law to the prejudice of the appellant's rights. *Merrill,* 250 S.C. at 195, 156 S.E.2d at 863; *see Powers v. Temple,* 250 S.C. 149, 159, 156 S.E.2d 759, 763–64 (1967) (holding to justify reversal based upon improper admission of evidence, appellant must show prejudice and that jury was likely influenced thereby).

Whether an error is harmless depends on the circumstances of the particular case. *In re Harvey,* 355 S.C. 53, 63, 584 S.E.2d 893, 897 (2003). "No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." *State v. Mitchell,* 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). Error is harmless where it could not reasonably have affected the result of the trial. *Harvey,* 355 S.C. at 63, 584 S.E.2d at 897. Generally, appellate courts will not set aside judgments due to insubstantial errors not affecting the result. *State v. Sherard,* 303 S.C. 172, 176, 399 S.E.2d 595, 597 (1991). The admission of improper evidence is harmless where the evidence is merely cumulative to other evidence. *State v. Blackburn,* 271 S.C. 324, 329, 247 S.E.2d 334, 337 (1978).

To the extent the prior judgment was improperly admitted, we believe the other evidence presented in this case was more than sufficient to sustain the verdict that Ronnie willfully and maliciously destroyed the Corn Crop. First, there was testimony that the corn around the wellhead pipe on the West Field had not been destroyed, that it "was clearly [disced] around." Thus, whoever cut down the Corn Crop must have known the location of the pipe because it was purposefully avoided, even at night. The only people who knew about the pipe and were in the area on the night of June 25, 2003, were Jimmy, Kevin, Ronnie, and possibly Todd. It is highly unlikely Jimmy or Kevin would destroy their own crop

after spending so much time and energy growing it. Moreover, even though Todd was the legal holder of the joint interest in the Property, Todd worked full-time at a local cement factory, and it was Ronnie who had farmed the property since 1966, so it is unlikely Todd was the one who destroyed the Corn Crop. Second, on the morning after the Corn Crop was destroyed, there was a trail of corn husks and silks leading from the West Field back to where Ronnie's tractor was parked, and the tractor and disk harrow were covered with stalks and husks. We believe the only reasonable conclusion to draw from the evidence is that Ronnie destroyed the Corn Crop.

Therefore, we believe to the extent the admission of the prior judgment into evidence was error, it was an insubstantial error not affecting the result of the trial.

## CONCLUSION

Accordingly, the trial court's decision is

**AFFIRMED.**

SHORT and LOCKEMY, JJ., concur.