**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Harland Jones, Appellant,

v.

Karen Robinson, Respondent.

Appellate Case No. 2020-000581

Appeal from Richland County
Robert E. Hood, Circuit Court Judge

Unpublished Opinion No. 2023-UP-369
Heard April 5, 2023 – Filed November 15, 2023

**AFFIRMED**

Wallace K. Lightsey, Meliah Bowers Jefferson, and John Carroll Moylan, III, all of Wyche Law Firm, of Greenville; Eric Marc Poulin, Lane Douglas Jefferies, and Roy T. Willey, IV, all of Poulin, Willey, Anastopoulo, LLC, of Charleston; and Gus A. Anastopoulo, of Gus Anastopoulo Law Firm, of Charleston, all for Appellant.

Sterling Graydon Davies, Brett Harris Bayne, and Michael McCrea Trask, all of McAngus Goudelock & Courie, LLC, of Columbia; and Helen F. Hiser, of McAngus Goudelock & Courie, LLC, of Mount Pleasant, all for Respondent.

---

**PER CURIAM:**  In this personal injury action, Appellant Harland Jones challenges an order granting a motion for sanctions (Final Sanctions Order) imposed against him.  Appellant maintains that the circuit court erred in (1) finding that two discovery orders were the law of the case; (2) imposing disproportionate sanctions for the alleged misconduct; and (3) ordering Appellant to pay all of Respondent Karen Robinson's attorney fees and costs.  We affirm.

## FACTS/PROCEDURAL HISTORY

On June 7, 2016, Appellant was travelling on a bicycle down Old Bluff Road in Richland County when he collided with a car driven by Respondent.  On March 16, 2018, Appellant filed a complaint for compensatory and punitive damages.  We quote extensively from the record due to the centrality of the events before us.

On May 1, 2018, Respondent's counsel sent a first set of interrogatories to Appellant, including the following:

> Give the names and addresses of persons known to [Appellant] or counsel to be witnesses concerning the facts of this case and indicate whether written or recorded statements have been taken from these witnesses, and indicate who has possession of such statements.

On May 8, 2018, Respondent answered the complaint and later filed an amended answer and counterclaim, asserting claims for negligence and a violation of the South Carolina Frivolous Civil Proceedings Sanctions Act (FCPSA).[1]  In this amended answer, Respondent asserts that "[Appellant] turned his [bicycle] directly into oncoming traffic with no warning or explanation and that [Appellant] was the sole proximate cause of the accident in question."  Additionally, Respondent argued that "no reasonable attorney would believe the allegations raised in the [s]ummons and [c]omplaint are reasonably supported by the actual facts."

On June 5, 2018, Appellant filed a motion to dismiss Respondent's counterclaim for violation of the FCPSA, indicating that "discovery in this case is expected to reveal witnesses to the events giving rise to the subject motor vehicle collision[.]"

---

[1] S.C. Code Ann. §§ 15-36-10, -100 (Supp. 2022).

On August 10, 2018, 103 days after Respondent served her interrogatories and requests for production, Appellant still had not responded. Respondent filed a motion to compel discovery. Along with the motion, Respondent served supplemental interrogatories on Appellant, requesting information about the witnesses referred to in Appellant's motion to dismiss.

On October 3, 2018, Judge DeAndrea Benjamin issued a Form 4 Order granting Respondent's motion to compel, stating that the "[r]emaining records and all supplemental responses should be received in 20 days." Appellant did not respond to discovery in the time allotted, and on October 30, 2018, Judge Benjamin issued an Order Granting Rule to Show Cause based on his failure to comply. On November 7, 2018, Appellant responded to the requested interrogatories but answered "none" when asked for information regarding the identity of the fact witnesses.

On March 6, 2019, counsel for Respondent deposed Appellant, who identified two potential fact witnesses. Appellant also recalled the following from the incident:

> When I was riding my bike back down the street towards my house, I normally turn left because I normally ride on the right side of the street, so I normally turn left. So[,] I put my hand out to turn left in front of the car. And then when I put my hand out left to turn in front of the car, letting the car know that I was turning in front of them, I looked over at [the lady in the car] and let her know that I was turning in front of her, so I put my hand out.

> [There were] cars behind her, so she slowed down and let me know that I could turn in front of her. So[,] when she slowed down, [she] let me know that it was all right for me to turn [in] front of her, [and] I proceeded to turn in front of her. The next thing I know, I had a heavenly experience.

Counsel for Respondent then had the following exchange with Appellant regarding his recollection of Respondent's vehicle:

> Q: Do you recall what vehicle hit you?

A:    No. I was told what vehicle had hit me.

Q:    The vehicle that you mentioned with the woman inside of it, who may have [been] your wife's cousin, do you know whether or not that is the vehicle that hit you?

A:    No, that ain't the vehicle that hit me.

Q:    And how do you know that?

A:    Because that wasn't what told—told to me.

Q:    Do you recall seeing any vehicle hit you?

A:    No.

Q:    If the last thing that you remember is turning in front of this vehicle, what makes you think that another vehicle hit you?

A:    I was told another vehicle hit me.

Appellant was later asked why, in an answer provided during discovery, he indicated that another vehicle attempted to make a pass while he was riding his bicycle. Appellant's trial counsel, Lane Jefferies objected, stating that "he didn't write that answer. We wrote that answer. And anything he would know about it, he knows from talking to his attorneys."

Appellant also testified about a conversation that occurred between him and an alleged witness to the incident named "Alex":

Q.    Do you know of any witness that saw the defendant cross over the yellow line into the opposite lane of travel?

A.    I was told.

Q.    Who told you that?

A.    Alex.

Q.    Where was Alex at the time of the accident?

A.    He was looking down the street at me.

Q.    So[,] you are saying that Alex witnessed this accident from your house?

A.    Yes.

Q.    He was standing at your house at the time of the accident?

A.    Yes.

. . . .

Q.    Can you tell me precisely what Alex told you about what he saw?

A.    He told me that he saw the car when it came across the line when I was turning. That when I was turning, the car came, the car hit me [be]cause it came past the double line to pass the other cars, [sped] up to get in front of the other cars. Then he said, when I went to go make my turn, the car had hit me. That's all I can remember him telling me.

On March 7, 2019, in response to Appellant's admission that he never saw the vehicle that hit him on the day of the incident, Respondent served the following requests for admission:

1. You have alleged ". . . [Respondent] caused [Appellant] to strike the front of [Respondent's] vehicle by unlawfully travelling into the lane of oncoming traffic." Admit this allegation from your Complaint is not true.

2. You have alleged ". . . [Respondent] crossed over into [Appellant's] lane of travel, thereby causing [Appellant] to

strike the front of [Respondent's] vehicle by unlawfully traveling into the lane of oncoming traffic. Admit this allegation from your June 5, 2018 Motion is not true.

Appellant gave the following response to both requests:

ANSWER: Denied. After conducting written discovery and depositions, it appears that [Respondent] was no longer travelling in the lane of oncoming traffic when she wrongfully struck [Appellant]. Nonetheless, it was [Respondent's] illegal passing maneuver, in which she unlawfully travelled in the lane of oncoming traffic, which caused her to strike [Appellant] immediately after she returned to the westbound lane of travel.

Respondent sent the following request for admission in response to the denial:

Admit that there is no deposition testimony, witness, or any other material to support the allegation asserted in Plaintiff's Responses to Defendant's Second Set of Requests for Admission that state[s] "it was [Respondent's] illegal passing maneuver, in which she was unlawfully travelling in the lane of oncoming traffic, which caused her [to] strike Plaintiff immediately after she returned to the westbound lane of travel[.]"

On April 4, 2019, Appellant responded with a one-worded answer: "Denied."

On May 7, 2019, Judge Roger Couch heard Respondent's Motion for Summary Judgment and Second Motion to Compel. Without objection, Judge Couch issued a bench ruling ordering Mr. Jefferies to produce witnesses by June 1, 2019, and denied Respondent's Motion for Summary Judgment. Judge Couch did not file a formal written order until July 3, 2019.

In the meantime, on June 21, 2019, counsel for Respondent and Gus Anastapoulo, a previously unnamed counsel for Appellant, met for mediation. In the mediation, Mr. Anastapoulo stated—despite failing to produce witnesses by Judge Couch's deadline—that there were "several eyewitnesses to the accident who would be called to testify" and asserted many factual inaccuracies in the case. Mr. Anastapoulo initially requested $500,000 to settle the case despite analogizing the

likelihood of success of his case to a "1 in 10 chance[,]" a "snowball's chance[,]" and "a game of Russian Roulette." Counsel for Respondent countered with a settlement offer of $40,000, and Mr. Anastapoulo left shortly thereafter.

On June 27, 2019, Respondent filed a Motion for Sanctions, seeking sanctions pursuant to Rules 11 and 37 of the South Carolina Rules of Civil Procedure, and Rules 6, 8, and 10 of the South Carolina Court-Annexed Alternative Dispute Resolution Rules.

On July 3, 2019, Judge Couch filed his formal written order granting Respondent's Second Motion to Compel and denying Respondent's Motion for Summary Judgment. In response, Appellant filed a motion for reconsideration, which was subsequently denied. In his July 3 order, Judge Couch warned that a failure to respond to his order granting Respondent's motion to compel the identity of witnesses would be met with Rule 37 sanctions. Because the agreed-upon June 1 deadline had passed, Appellant had already failed to respond within the time allotted. Nevertheless, on July 5, 2019, Respondent received a supplemental response identifying two new witnesses.

On August 12, 2019, the parties went to trial before Judge Casey Manning. In a pretrial conference, during a colloquy with Judge Manning, Mr. Jefferies stated the following as a justification for not identifying one of two potential witnesses[2] to the accident referred to as "Alex":

> [Appellant] testified in his deposition that Alex was a
> witness to the wreck. [Appellant], also, testified that Alex
> lived in a shack in the woods near Winnsboro. He did not
> know an address. He did not know a phone number. We
> attempted to find Alex. We would love to have a witness.
> We did not find Alex. No Alex. We found some shacks
> in the woods, but we did not find Alex.

---

[2] The other alleged witness to the incident was a woman who may have been Appellant's wife's cousin; however, in his deposition on March 6, 2019, he could not recall her name. On July 5, 2019, "Lettie Jackson" was listed as a witness to the incident in supplemental responses to discovery. In response, counsel for Respondent sent Mr. Jefferies an email asking for more details about the identity of this individual. Mr. Jefferies did not supply this information. In fact, Lettie Jackson was not identified as the wife's cousin until trial before Judge Manning on August 13, 2019.

Judge Manning then asked Mr. Jefferies whether they had complied with Judge Couch's order. Mr. Jefferies responded twice in the affirmative despite having failed to meet the June 1 deadline. Judge Manning accepted this answer but warned that if Mr. Jefferies was not telling the truth, he would impose additional sanctions.

Mr. Jefferies expressed his intention to call two witnesses at trial: Lettie Jackson, a woman indicated by Appellant to have witnessed the accident, and Treacy Randolph, Appellant's stepdaughter and caretaker. Counsel for Respondent then informed Judge Manning that under Judge Couch's order, any witness not disclosed by June 1, 2019, would be barred from testifying. Judge Manning ruled that Appellant's witnesses could not testify.

The jury was then brought in, and Mr. Jefferies immediately called one of the excluded witnesses to testify. Judge Manning then excused the jury and heavily admonished Mr. Jefferies for failing to abide by his ruling.

After the jury was brought back in, Appellant and Mr. Jefferies had the following exchange regarding Alex:

> Q: Was it Alex that was with you that day you got hit that came over to the house? Or do you remember?
>
> A: Yes, it was him.
>
> Q: Okay. Did you try to find Alex after that so he could come testify?
>
> A: Yes. But he said –
>
> Q: Did you find him?
>
> A: Yeah, yeah. But he said he didn't see anything.

The next day, Respondent called Michelle Murray, the driver following directly behind Appellant on the day of the accident. Murray testified to the following events:

> Well, I was headed down Old Bluff Road to pick up my mom. And as I got on to Old Bluff Road, I noticed Mr.

Jones ahead of me on the bicycle. So[,] I kind of broke my speed. And we proceeded down Old Bluff Road.

And once we got to a certain point, Mr. Jones put up a hand signal. And being that we're all from the same neighborhood, it[] was -- you know, I knew it was before he got to his house. So[,] I'm thinking maybe he's signaling to let me know that he's going to make a left turn, which I had already broken my speed. . . .

So[,] we traveled on a little bit more. And then all [of a] sudden, he made a left turn, at which point, I screamed. I let out a scream. Because, you know, in my mind—and I'm just—I'm getting upset thin[kin]g about it. But I let out a scream. Because I could see the other car coming.

And, as I said, it was before he got to his house. So[,] I wasn't expecting him to turn so soon. But he did. And, like I said, I screamed. And then I stopped. I hit my brakes. And I stopped.

Murray was then questioned on seeing Respondent's vehicle approaching from the other direction in the following exchange:

Q: . . . As you were coming down the roadway, did you see Ms. Robinson coming towards you?

A: I did in [the] distance.

Q: At any point from the distance up until the collision happened, did you ever see her vehicle come into your lane of travel [in which] you were driving?

A: No.

Q: At any point that day, did you ever see her vehicle cross over the double yellow line, which would then be into your lane of travel?

A: No.

After all witnesses were examined and counsel for Appellant rested, the court heard motions from both parties.  Counsel for Appellant submitted a motion for directed verdict, arguing that because Respondent was not wearing her prescription glasses as required under S.C. Code Ann. § 56-1-220 (2017), she was negligent as a matter of law.  The court agreed that a directed verdict on negligence per se was warranted.  However, during his closing argument, counsel for Respondent improperly included misleading information regarding medical bills, and the court reluctantly declared a mistrial.

On September 27, 2019, a hearing was held before Judge Robert E. Hood on Respondent's June 27, 2019 motion for sanctions.  At the hearing, Appellant argued that Respondent was not prejudiced by the discovery violations.  In response, the court stated:

> You're taking the position that regardless of the fact that [Appellant] repeatedly abused and disregarded circuit court judges' orders, [Respondent] isn't []prejudice[d] any more? . . .  Even though, you know, we ignored Judge Benjamin's order.  We ignored the Rule to Show Cause.  We ignored Judge Couch's order.  We ignored Judge Manning's order.  Now they're not under anymore—now they're not prejudiced now because we have got it delayed long enough that they know who the person is going to be.

On March 2, 2020, the court issued its Final Sanctions Order.  In the Final Sanctions Order, the court stated that Appellant's answer to Respondent's March 7, 2019 requests for admission "clearly lacked any good faith basis in fact at the time it was made."  The court ultimately struck Appellant's complaint and awarded Respondent $29,788.24 in attorney's fees and costs.  This appeal followed.

### ISSUES ON APPEAL

I.   Are the findings and conclusions of Judge Couch's and Judge Benjamin's discovery orders the law of the case?

II.  Did the circuit court err in granting Respondent's motion for sanctions due to a lack of factual support?

III.    Did the circuit court err in imposing disproportionate sanctions for the alleged misconduct?

**LAW/ANALYSIS**

"The imposition of sanctions is generally entrusted to the sound discretion of the trial judge." *Barnette v. Adams Bros. Logging*, 355 S.C. 588, 593, 586 S.E.2d 572, 575 (2003). "A trial judge's exercise of his discretionary powers with respect to sanctions imposed in discovery matters will not be disturbed on appeal absent a clear abuse of discretion." *Id.* "The burden is on the party appealing from the order to demonstrate the trial court abused its discretion." *Id.* "An abuse of discretion may be found where the appellant shows that the conclusion reached by the trial court was without reasonable factual support and resulted in prejudice to the rights of appellant, thereby amounting to an error of law." *Karppi v. Greenville Terrazzo Co.*, 327 S.C. 538, 542, 489 S.E.2d 679, 681 (Ct. App. 1997).

**I.    Law of the Case**

Appellant argues that Judge Couch's and Judge Benjamin's orders granting Respondent's motions to compel were distorted by factual mischaracterizations that were echoed in the Final Sanctions Order. Respondent argues that the findings and conclusions of the discovery orders are unappealed and are, thus, the law of the case. We agree with Respondent.

We acknowledge that "[a]n order directing a party to participate in discovery is interlocutory and not directly appealable under S.C. Code Ann. § 14-3-330." *Ex parte Whetstone*, 289 S.C. 580, 580, 347 S.E.2d 881, 881 (1986). "Section 14-3-330(1) allows a party to wait until final judgment to appeal intermediate orders 'necessarily affecting the judgment not before appealed from.'" *Link v. Sch. Dist. of Pickens Cnty.*, 302 S.C. 1, 6, 393 S.E.2d 176, 179 (1990) (quoting § 14-3-330 (2017)). For that reason, "to challenge the specific rulings of [] discovery orders, the normal course is to refuse to comply, suffer contempt, and appeal from the contempt finding." *Davis v. Parkview Apartments*, 409 S.C. 266, 280, 762 S.E.2d 535, 543 (2014). However, if a party elects to accept the court's formulation of discovery, rather than to refuse to comply and suffer contempt, these orders are the law of the case. *See id.* at 281, 762 S.E.2d at 543.

In *Davis*, the appellants attempted to appeal various discovery rulings. *Id.* at 280, 762 S.E.2d at 542–43. Our supreme court found that:

> [T]o challenge the specific rulings of the discovery orders, the normal course is to refuse to comply, suffer contempt, and appeal from the contempt finding. . . .
>
> Appellants did not follow that route here. Rather, they continued along in the litigation, attempting to divert the implementation of the court's rulings by providing incomplete responses and causing delay through other tactics while they decided whether or not to surrender to the possibility of being held in contempt of court. However, during this time, Appellants continued to accept the circuit court's formulation of discovery. Right or wrong, these decisions form the law of the case, and Appellants are bound by them now.
>
> Only after Respondents filed a motion for sanctions, and Appellants were found to be in contempt of court as part of those sanctions, did they appeal. While this was a final order for purposes of appellate review, as it ordered dismissal of the case, the merits of the underlying discovery orders are not before this [c]ourt on appeal. Thus, despite Appellants' vehement objections to the [discovery orders], the only reviewable question before this [c]ourt is whether the sanctions were properly awarded.

*Id.* at 280–81, 762 S.E.2d at 543 (citation omitted).

Here, Appellant did not challenge the earlier discovery orders in the manner prescribed by *Davis*. Instead, Appellant merely appealed the following orders of Judge Hood in his Notice of Appeal:

1. The October 31, 2019 Order Granting Defendant's Motion for Sanctions;

2. The March 2, 2020 Amended Order Granting Defendant's Motion for Sanctions;

3. The March 18, 2020 Order/Electronic Form 4;[3] and

4. The March 23, 2020 [Form 4] Order [awarding Respondent attorney's fees and costs].

Also, Appellant conceded in oral argument that he is not appealing the interlocutory discovery orders. Therefore, the findings of the underlying discovery orders are the law of the case.

## II. Appropriateness of Sanctions

Appellant argues that the circuit court's Final Sanctions Order lacks the factual basis necessary for an award of sanctions. We disagree.

### A. Frivolity

Appellant contends that the circuit court erred in finding his prevailing theory of the case frivolous. We find this issue inconsequential.

"Under Rule 11(a), SCRCP, a party and/or the party's attorney may be sanctioned for filing a frivolous pleading, motion, or other paper, or for making frivolous arguments." *Ex parte Gregory*, 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008). "A court imposing sanctions under Rule 11 should, in its order, describe the conduct determined to constitute a violation of the Rule and explain the basis for the sanction imposed." *Runyon v. Wright*, 322 S.C. 15, 19, 471 S.E.2d 160, 162 (1996).

Our courts recognize "an overriding rule of civil procedure which says: whatever doesn't make any difference, doesn't matter." *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987). In the Final Sanctions Order, Judge Hood found that a pair of answers to Respondent's requests for admission "clearly lacked any good faith basis at the time [they were] made." As a result, the court indicated that sanctions pursuant to Rule 11 were warranted but declined to administer them under that rule. Even if the court's statement regarding Rule 11 was made in error, the error is harmless because it did not affect the result of the sanctions prescribed. *See Judy v. Judy*, 384 S.C. 634, 646, 682 S.E.2d 836, 842 (Ct. App. 2009) ("Error is harmless where it could not reasonably have affected the result of the trial."). Therefore, any possible error attributable to Judge Hood's statements is inconsequential. *See Judy*, 384 S.C. at 646, 682 S.E.2d at 842 ("Generally, appellate

---

[3] There is no such order in the record.

courts will not set aside judgments due to insubstantial errors not affecting the result.").

### B. Discovery Violations

Appellant asserts the circuit court erred in finding that he engaged in discovery violations.  We disagree.

"The parties' disclosure of information before trial is designed to avoid surprise and to promote decisions on the merits after a full and fair hearing."  *Bensch v. Davidson*, 354 S.C. 173, 182, 580 S.E.2d 128, 132–33 (2003).  Parties may serve written interrogatories which "shall be answered separately and fully in writing under oath, unless [they are] objected to, in which event the reasons for objection shall be stated in lieu of an answer."  Rule 33(a), SCRCP.  "If a party fails to obey an order to provide or permit discovery, the trial court may impose sanctions such as striking pleadings, dismissing the action, or rendering a default judgment."  *Griffin Grading & Clearing, Inc. v. Tire Serv. Equip. Mfg. Co.*, 334 S.C. 193, 198, 511 S.E.2d 716, 718 (Ct. App. 1999); *see also In re Anonymous Member of S.C. Bar*, 346 S.C. 177, 194, 552 S.E.2d 10, 18 (2001) ("Our judges must use their authority to make sure that [all] forms of discovery abuse do not succeed in their ultimate goal: achieving success through abuse of the discovery rules rather than by the rule of law.").

First, Appellant places great emphasis on the difference between the "inability" and "refusal" to identify the elusive witnesses.  This distinction is immaterial.

At two separate instances, Appellant led the court to believe that eyewitnesses would corroborate his theory of the case.  These actions led to Judge Benjamin's and Judge Couch's orders granting Respondent's motions to compel answers to discovery requests.  By neglecting to provide *any* responses within the allotted time, Appellant was in violation of these orders.  The purported "inability" to find certain witnesses could have been timely conveyed in accordance with the orders, but Appellant elected not to do so.

Appellant next argues that Respondent did not suffer prejudice because the witnesses to be revealed by these orders were later found not to have witnessed the accident at all.  We disagree.

For over a year of discovery delays and violations of discovery orders, Appellant maintained that he had a colorable negligence claim. Even though Appellant's theory of the case underpinning his negligence claim was ultimately revealed to be conjectural, Respondents still suffered prejudice. In *Griffin Grading and Clearing, Inc.*, the court identified the prejudice suffered by the respondents as the "multiple, egregious discovery abuses that blocked [their] attempts to conduct meaningful discovery." 334 S.C. at 199, 511 S.E.2d at 719. Further, our courts also consider unnecessary time delay in determining the appropriateness of discovery sanctions. *See Davis*, 409 S.C. at 283, 762 S.E.2d at 544 (holding that "Appellants' failure to comply with the various orders of the court was willful and deliberate and caused unnecessary delay of this case and prejudice to Respondents").

Here, Respondents were unable to conduct meaningful discovery and suffered unnecessary delay as a result of Appellant's failure to comply with the circuit court's discovery orders. Therefore, we find that Respondent suffered prejudice as a result of the discovery violations.

### C. Mediation Abuses

Rule 6(b)(3) of the South Carolina Court-Annexed Alternative Dispute Resolution Rules mandates that the "party's counsel of record" be physically present in mediation settlement conferences. If a party fails to comply,

> the court may, on its own motion or motion by any party, impose upon that party, person or entity, any lawful sanctions, including, but not limited to, the payment of attorney's fees, neutral's fees, and expenses incurred by persons attending the conference; contempt; and any other sanction authorized by Rule 37(b), SCRCP.

Rule 10(b), SCADR.

In a letter sent from Mr. Jefferies to Respondent's counsel, Mr. Jefferies stated that he believed that the "rules require that both [Respondent's counsel and Mr. Jefferies] physically attend the mediation." The circuit court agreed; however, the court believed that Mr. Anastapoulo did not qualify as "counsel of record" for Appellant because

> [Mr. Anastapoulo] has not appeared on a single pleading in this case, has not filed a Notice of Appearance, has not

been on any email or correspondence in this case, has not been present at any deposition, and has not been present at any hearing.

During oral arguments, Appellant's appellate counsel agreed and conceded that Mr. Anastapoulo was not counsel of record.

Additionally, Mr. Anastapoulo had a deficient understanding of the case that led to a series of misguided assertions and an insincere demand. For example, at numerous instances, Mr. Anastapoulo commented on Appellant's extremely low likelihood of prevailing, yet proceeded to make an excessive demand of $500,000. After negotiations failed to progress, Mr. Anastapoulo left mediation.

In the absence of instructive statutory guidance as to the meaning of "counsel of record," and with an understanding of the totality of the circumstances, the circuit court's interpretation of that phrase is within the spirit of the rule. We emphasize that it is fundamental to the administration of justice that a lawyer be competent, informed, and respectful in all professional functions. *See* Rule 407, SCACR (listing the range of a lawyer's professional responsibilities). Therefore, we hold that the circuit court did not abuse its discretion in administering sanctions accordingly.

## III.  Harshness of Sanctions

Appellant argues that even if sanctions are warranted, the sanctions imposed by the Final Sanctions Order are grossly disproportionate to the misconduct. We disagree.

### A. Dismissal

First, Appellant argues that striking his complaint under Rule 37(b)(2)(C), SCRCP and Rule 10(b), SCADR was unduly harsh. We disagree.

"If a party fails to obey an order to provide or permit discovery, the trial court may impose sanctions such as striking pleadings, dismissing the action, or rendering a default judgment." *Griffin Grading & Clearing, Inc.*, 334 S.C. at 198, 511 S.E.2d at 718 (citing Rule 37(b)(2)(C), SCRCP). These same sanctions may also be imposed for mediation abuses. *See* Rule 10(b), SCADR (explaining that the sanctions for violations of the ADR Rules include "payment of attorney's fees, neutral's fees, and expenses incurred by persons attending the conference; contempt; *and any other sanction authorized by Rule 37(b), SCRCP*[.]" (emphasis added)).

"[T]he sanction imposed should be reasonable, and the [c]ourt should not go beyond the necessities of the situation to foreclose a decision on the merits of a case." *Balloon Plantation, Inc. v. Head Balloons, Inc.*, 303 S.C. 152, 154, 399 S.E.2d 439, 440 (Ct. App. 1990). "When the court orders default or dismissal, or the sanction itself results in default or dismissal, the end result is harsh medicine that should not be administered lightly." *Griffin Grading & Clearing, Inc.*, 334 S.C. at 198, 511 S.E.2d at 718. "Where the sanction would be tantamount to granting a judgment by default, the moving party must show bad faith, willful disobedience or gross indifference to its rights to justify the sanction." *Id.* at 198–99, 511 S.E.2d at 719.

Our appellate courts have frequently upheld dismissal sanctions under Rule 37(b)(2), SCRCP when a party willfully fails to comply with discovery orders, resulting in prejudice to an adversary. *See Rogers v. Rogers*, 432 S.C. 168, 178, 182–83, 851 S.E.2d 447, 452, 455 (Ct. App. 2020) (finding that the family court's prohibition against wife's testimony on the issues of alimony, child support, equitable apportionment, and attorney's fees and against wife offering any evidence regarding her income, alimony, or equitable apportionment was an appropriate sanction when wife's failure to comply with discovery orders concealed integral information about the case); *Davis*, 409 S.C. at 283, 762 S.E.2d at 544 (upholding a dismissal sanction when appellants "willfully and repeatedly failed to comply with the circuit court's orders in any meaningful way," creating unnecessary delay and prejudice); *McNair v. Fairfield County*, 379 S.C. 462, 467, 665 S.E.2d 830, 832–33 (Ct. App. 2008) (finding that the circuit court properly determined the appellant's willful disobedience of previous discovery orders warranted striking the appellant's answer to the respondent's complaint challenging a condemnation action and dismissing the condemnation action); *QZO, Inc. v. Moyer*, 358 S.C. 246, 257, 594 S.E.2d 541, 547 (Ct. App. 2004) (affirming the sanction of striking the appellant's answer and declaring him in default where evidence supported the circuit court's finding that the appellant willfully destroyed evidence and willfully violated a temporary restraining order); *Barnette*, 355 S.C. at 594–96, 586 S.E.2d at 575–76 (affirming a dismissal sanction when a party failed to exchange her witness and exhibit lists as well as failed to submit social security records in violation of a discovery order); *Griffin Grading & Clearing, Inc.*, 334 S.C. at 199, 511 S.E.2d at 719 (upholding the circuit court's striking of a pleading when there were multiple discovery abuses impeding an adversary's ability to conduct meaningful discovery); *Halverson v. Yawn*, 328 S.C. 618, 620–21, 493 S.E.2d 883, 884–85 (Ct. App. 1997) (finding that a dismissal of a complaint was appropriate when appellant failed to timely respond to discovery requests, in violation of an order).

However, our courts have reversed dismissal sanctions in unique situations involving the following: a discovery rule arising under a specific settlement-encouraging statute; nonoffending and independently represented co-defendants suffering prejudice as a result of one party's actions; a discovery violation clearly understood by the court not to have been intentional; a judge's misunderstanding of his proper use of discretion; and eight individual plaintiffs failing to timely provide formal answers to interrogatories in a consolidated case involving 271 plaintiffs. *See Rickerson v. Karl*, 412 S.C. 215, 223–25, 770 S.E.2d 767, 772–73 (Ct. App. 2015) (reversing a dismissal sanction for violating a mediation deadline under S.C. Code Ann. § 15-79-125 because avoiding the dismissal of a case for a technical violation of the statute that was not willful furthered the statute's settlement-encouraging function); *Karppi v. Greenville Terrazzo Co.*, 327 S.C. 538, 543–45, 489 S.E.2d 679, 682–83 (Ct. App. 1997) (reversing the dismissal of a defendant's pleadings when it prejudiced an independently represented non-offending co-defendant); *Orlando v. Boyd*, 320 S.C. 509, 511–12, 466 S.E.2d 353, 355 (1996) (finding that excluding a crucial expert witness from testifying was akin to dismissal and inconsistent with the trial judge's statement that the discovery violation was "*certainly not anything intentionally done*"); *Balloon Plantation, Inc.*, 303 S.C. at 154–55, 158, 399 S.E.2d at 440–41, 442 (reversing a dismissal sanction because appellants' answers to discovery were only a few hours late and the circuit court judge falsely believed that he was strictly bound by another circuit court judge's discovery order); *Baughman v. Am. Tel. & Tel. Co.*, 298 S.C. 127, 130, 378 S.E.2d 599, 601 (1989) (finding dismissal sanctions for eight plaintiffs too severe when the defendant took lengthy depositions regarding the eight claims and was "[c]learly . . . not prejudiced by the failure to timely receive formal answers to basic interrogatories").

In the present case, Appellant willfully failed to comply with two discovery orders, Mr. Jefferies misled Judge Manning about complying with one of the two orders, and Appellant failed to attend mediation with his counsel of record. We are cognizant of the harsh nature of the dismissal sanction, but absent a circumstance in which dismissal is clearly unwarranted, the circuit court did not abuse its discretion in administering it. In other words, even if we agreed with Appellant that dismissal was harsh given the circumstances of this case, our jurisprudence dictates that we not supplant the circuit court's discretion with our own. Furthermore, while we are sensitive to Appellant for repercussions incurred as a result of Mr. Jefferies's misconduct, "the acts of an attorney are directly attributable to and binding on the client." *Griffin Grading & Clearing, Inc*, 334 S.C. at 200, 511 S.E.2d at 719. Therefore, we find that the circuit court did not abuse its discretion in striking Appellant's complaint.

B. Attorney Fees

Appellant contends that the circuit court abused its discretion in ordering excessive attorneys' costs and fees to Respondent. We disagree.

Under Rule 37(b), SCRCP,

> the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Further, "[a]s a general rule, the amount of attorneys fees to be awarded in a particular case is within the discretion of the trial judge." *Burton v. York Cnty. Sheriff's Dep't*, 358 S.C. 339, 357, 594 S.E.2d 888, 898 (Ct. App. 2004).

In this case, Appellant's counsel was ordered to pay $23,277.14 in attorneys' fees and costs along with additional costs and fees related to the Rule 59(e) motion. This number was derived from counsel for Respondent's amended affidavit with an expense sheet listing $20,928.50 in attorneys' fees and $2,348.64 for costs. The items listed on the expense sheet relate not to the entirety of the fees and costs, but specifically to the violation of the discovery orders and mediation abuses. Therefore, we find the court did not abuse its discretion in awarding these costs and fees accordingly.

## CONCLUSION

Based on the foregoing, the Final Sanctions Order is

**AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS and VERDIN, JJ., concur.**